FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

2002 SEP 18  P 12: 40

ANTHONY GRAY
                                        CLERK'S OFFICE

       v.                      Civil No. CCB-02-385  AT BALTIMORE

                                           BY_____DEPUTY

STATE OF MARYLAND, et al.

### MEMORANDUM

Now pending before this court are motions to dismiss brought by each of the defendants

in this case. Plaintiff Anthony Gray was a resident of Calvert County who was allegedly

wrongfully incarcerated for seven and a half years for a rape and murder in 1991. The

defendants in this action, the State of Maryland, Calvert County, Lawrence Stinnett, Brian

Newcomer, and Richard Sheldon, are all alleged to have contributed to or caused Gray's

wrongful incarceration. This matter has been fully briefed and no hearing is necessary. See

Local Rule 105.6. For the reasons set forth below, defendants' motions will be granted in part

and denied in part.

### BACKGROUND

Since the court is considering motions to dismiss, the factual background of the case is

taken entirely from the Amended Complaint. Anthony Gray is an African-American resident of

Maryland, who resided in Calvert County during the period prior to his incarceration. (Am.

Compl. ¶ 1.) Gray has an I.Q. of 79, and was enrolled in a "special education" program prior to

dropping out of high school without graduating. (Id.)

On or about May 13, 1991, thirty-eight year old Linda May Pellicano was brutally raped

and murdered by an intruder in her Calvert County home. (Id. ¶ 10.) The assailant then escaped

in Pellicano's car after stealing some blank checks. (Id. ¶ 12.) On June 20, 1991, Gray was

"arrested, charged and held without bail" for the rape and murder of Linda Pellicano. (Id. ¶ 13.) According to the Amended Complaint, "Gray's arrest and detention was ordered, directed, authorized, approved and/or ratified by each of the Defendants." (Id.) Around the same time two other African-Americans, Paul Holland and Leonard Long, were arrested and charged with the crime. (Id. ¶ 14.)

From June 20, 1991 until mid-August 1991, Gray was without representation and was interrogated "repeatedly." (Id. ¶¶ 15, 16.) "During the interrogations, the Defendants repeatedly told Gray that the two other suspects, Holland and Long, had confessed to involvement in the crime and were saying that he (Gray) committed the murder." (Id. ¶ 17.)

Gray initially denied any involvement in the crime. (Id. ¶ 18.) The day after he was arrested, however,

> in response to intensive questioning, threats and warnings by Defendants about what could happen to him, which continued all night long, Gray gave a statement to Defendants Stinnett and Newcomer as follows: That he, Long and Holland had approached the Pellicano house; that he had stood outside the Pellicano house as a lookout while Holland and Long enter[ed] the house; that no one appeared to be home at that time; that, while Holland and Long were inside the Pellicano house, Linda May Pellicano pulled into the driveway and entered the house; and that, at that point, Gray walked away.

(Id.) Gray was interrogated "intensely" until mid-August of 1991. (Id. ¶ 19.) During these interrogations, "Defendants continued to tell Gray that Holland and Long were pinning the crime on him and that he could get the death penalty or life without the possibility of parole for the crime." (Id. ¶ 20.) Despite Gray's initial confession "[t]hrough June, July, and into August of 1991, Gray continued to either deny any involvement in the crime or repeat the same story, [described above], in response to continual pressure by Defendants." (Id. ¶ 21.) During this period, "Gray would become extremely upset and agitated to repeatedly hear from Defendants

2

that Holland and Long were naming him as the murderer and rapist, and that he could get the death penalty or life without parole." (Id. ¶ 22.)

"Then, after over two months of incarceration, interrogation and threats by Defendants, all without benefit of legal representation, on August 6, 1991, Gray suddenly changed his statement to Defendant Sheldon." (Id. ¶ 23.) Gray confessed that he, along with Holland and Long, had been inside the Pellicano house, but that it was Holland who had committed the rape and murder. (Id.) He stated further that the three men had driven off in Pellicano's vehicle, and that Long had attempted to forge the stolen checks. (Id.) At some point after the August 6 statement, Gray retained counsel and questioning stopped. (Id. ¶ 24.)

According to the plaintiff, during the period that he was being interrogated, investigators were "turning up a substantial amount of exculpating evidence - both physical and eye witness - as to Gray (and Holland and Long)." (Id. ¶ 25.) Specifically, "[t]he State discovered that the witnesses near the scene of the crime, at or about the time the crime was committed, reported having seen a lone white male drive away in the victim's vehicle." (Id. ¶ 26.) Second, "[t]he State discovered that the fingerprint evidence excluded Gray (and Holland and Long)." (Id. ¶ 27.) Third, "[t]he State discovered that DNA evidence found at the scene excluded Gray (and Holland and Long)." (Id. ¶ 28.) Fourth, "[t]he State found that hair evidence found at the scene included one unidentifiable Caucasian pubic hair, some unidentifiable Caucasian head hairs, but no Negroid hairs of any kind . . . ." (Id. ¶ 29.) Fifth, "[t]he State recovered several of the checks that had been stolen from the Pellicano house. The handwriting on the recovered checks did not match that of Gray (or Holland or Long)." (Id. ¶ 30.) Finally, "[t]he State was unable to turn up any physical or witness evidence to implicate Gray (or Holland or Long or any other African-American) in the crime and, in fact, the evidence obtained by the State contradicted Gray's

3

statements which were made during intensive interrogation and pressure exerted by police while Gray remained locked up and unrepresented by counsel." (Id. ¶ 31.) Gray was not told of any of this "exculpating" evidence. (Id. ¶ 32.)

Gray, having been told that his supposed co-conspirators were pinning the crime on him, "became intent on insuring that Holland and Long 'did not walk' while Gray 'took the rap.'" (Id. ¶ 33.) Apparently because of his desire to ensure that Holland and Long would not go free while he alone was blamed for the crime, on October 7, 1991 Gray plead guilty to first-degree rape and agreed to testify against Holland and Long in exchange for a reduced sentence. (Id. ¶¶ 34-35.) Gray was sentenced to life in prison with the possibility of parole. (Id. ¶ 37.)[1]

Subsequent to Gray's plea, the case against Long was dismissed by the court at the conclusion of the state's evidence, and Holland was acquitted by a jury. (Id. ¶ 38.) Gray himself unsuccessfully petitioned the court for post-conviction relief in or about March 1992. (Id. ¶ 40.) During the period of Gray's incarceration, "the State's attorney located Mrs. Pellicano's actual murderer by matching the DNA collected in this case to that of a white male and, subsequently, obtained a conviction with respect to that individual." (Id. ¶ 41.) On February 8, 1999, the Circuit Court of Calvert County granted Gray a new trial and released him forthwith. (Id. ¶ 43.) Gray was not retried "due to a lack of evidence." (Id. ¶ 44.) Ultimately, Gray served seven and one-half years of his sentence. (Id. ¶ 39.)

On February 7, 2002, Gray filed an Amended Complaint in this court, which was again amended on March 8, 2002. The present Amended Complaint alleges nine separate counts against all defendants, including state law malicious prosecution (Count I), state law false arrest

---

[1] Gray also alleges that the court, upon accepting his guilty plea, failed to inform him of the maximum penalty available. (Id. ¶ 36.)

4

(Count II), state law false imprisonment (Count III), violation of Art. 24 of the Maryland

Declaration of Rights (Count IV), violation of the Fourteenth Amendment of the United States

Constitution (Count V), violation of the Fifth Amendment of the United States Constitution

(Count VI), violation of 42 U.S.C. § 1983 (Count VII), 42 U.S.C. § 1981 (Count VIII), and a

claim for attorney's fees under 42 U.S.C. § 1988.[2]  Named as defendants in the Amended

Complaint are the State of Maryland (the "State"); Calvert County (the "County"); Lawrence

Stinnett, who during the time relevant to the Amended Complaint served as the Sheriff of Calvert

County; and Brian Newcomer and Richard Sheldon, who at the time relevant to the Amended

Complaint served as Maryland State Troopers in Prince Frederick, Maryland.  (Id. ¶¶ 2-6.)

The State of Maryland and defendants Newcomer and Sheldon (the "Joint Movants")

have filed a motion to dismiss, or, in the alternative, for summary judgment (the "Joint Motion").

Defendant Stinnett and the County have filed motions to dismiss.

For the reasons set forth below, the court will grant the State of Maryland's motion to

dismiss with respect to Counts I-V.  Plaintiff has withdrawn Counts VI and VII.  (Pl's Opp. to

Joint Mot. at 14 & 16.)  Therefore, the only substantive count remaining against the State of

Maryland is Count VIII, based on § 1981.

Further, for the reasons set forth below, the court will dismiss Counts I and IV against

Stinnett in his official capacity.  The court will dismiss Counts II, III, and V against Stinnett,

Newcomer, and Sheldon in both their official and individual capacities.  The court further will

---

[2] In his opposition to the State's motion, Gray withdrew his Fifth Amendment claim (Pl.'s Opp. at 14), and the court will thus dismiss Count VI.  Also in his opposition, Gray withdrew his 42 U.S.C. § 1983 claim as against the State of Maryland and the individual defendants in their official capacities, and the court will thus dismiss in part Count VII.  The § 1983 claims as against the individual defendants in their individual capacities are discussed infra.

5

dismiss any claim under Count VII against Stinnett, Sheldon, and Newcomer based on a false

arrest theory and any claim based on a § 1983 malicious prosecution theory for damages suffered

after the plaintiff plead guilty on October 7, 1991. Plaintiff withdraws Count VI against Stinnett,

Sheldon, and Newcomer in their individual and official capacities, and withdraws Count VII

against Stinnett, Sheldon, and Newcomer in their official capacities. (Pl's Opp. to Joint Mot. at

14 & 16 Stinnett Opp. at 6 n.2.) The remaining claims against Stinnett, Sheldon, and Newcomer,

then are Counts I and IV, and a malicious prosecution claim under Count VII for their actions

prior to October 7, 1991 in their individual capacities, Count VIII, and a claim for attorneys'

fees.

Finally, for the reasons stated below, Counts II, III, and V against Calvert County will be

dismissed. Plaintiff has withdrawn Count VI. (Pl's Opp. to Joint Mot. at 14.) Therefore, the

Counts remaining against Calvert County are Counts I, IV, VII and VIII. Count VII remains

only to the extent that it states a claim for damages for malicious prosecution.

## ANALYSIS

Although the State's, Newcomer's, and Sheldon's joint motion is styled as a motion to

dismiss/or for summary judgment, because only one exhibit, which was not considered by the

court, was proffered along with the motion, it will be treated only as a motion to dismiss. "A

motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does

not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). When ruling on a

12(b)(6) motion, the court must view the complaint in the light most favorable to the plaintiff and

accept the plaintiff's factual allegations, as well as all reasonable inferences therefrom, as true.

See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin, 980 F.2d at 952.

Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. Randall v. United States, 30 F.3d 518, 522 (4th Cir 1994); Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995) (affirming a Rule 12(b)(6) dismissal with prejudice because plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).

I.      Federal Claims

        Because jurisdiction in this court for Gray's state law claims is contingent on the presence of Gray's federal claims, Gray's claims under federal law will be considered first.

        A.      42 U.S.C. § 1983

        In his Amended Complaint, Gray has alleged a violation of 42 U.S.C. § 1983 against all defendants. In his opposition to the Joint Movants' motion, Gray withdrew his § 1983 claim against the State and the individual defendants in their official capacities. (Pl.'s Opp. to Joint Mot. at 16.) The § 1983 claims present in this case are most similar to the common-law torts of false imprisonment/false arrest and malicious prosecution. Cf. Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). For that reason they will be referred to as the § 1983 false arrest claim, and the § 1983 malicious prosecution claim.

        1.      Section 1983 Statute of Limitations

        The Joint Movants argue that Gray's § 1983 claims are barred by Maryland's three-year statute of limitations. (Joint Mot. at 9-11.) The parties agree that Maryland's statute of

7

limitations controls on this count, but disagree over when the cause of action or actions began to accrue. (See Pl.'s Opp. to Joint Mot. at 13-14.) The Joint Movants argue that the limitations period should accrue as of the date of Gray's original arrest (the date upon which the cause of action for false arrest accrued), while Gray argues that it should accrue as of the date the criminal proceedings terminated in his favor (the date upon which the cause of action for malicious prosecution accrued). As discussed infra, the statute of limitations period has run for Gray's common law false arrest/false imprisonment claim, but it has not run for his malicious prosecution claim. In this respect, this case is similar to Brooks, where the plaintiff brought a § 1983 claim rooted both in false arrest and malicious prosecution, and where the original arrest was more than three years old, but the "favorable termination" of the prosecution was not. Brooks, 85 F.3d at 181-83. In Brooks, the Fourth Circuit found that the § 1983 malicious prosecution claim could proceed, despite the fact that the § 1983 false arrest claim was time barred. Id. Similarly here, because the statute of limitations has not run on Gray's common law malicious prosecution claim, his § 1983 malicious prosecution claim is viable, although his § 1983 false arrest claim is time barred. Id.; see also Lambert v. Williams, 223 F.3d 257, 262 n. 3 (4th Cir. 2000). Therefore, Gray's § 1983 false arrest claim will be dismissed.

      2.     Section 1983 Malicious Prosecution Claims

Stinnett argues that Gray has failed to plead a § 1983 malicious prosecution claim because of a failure to plead a favorable termination to the underlying criminal case. (Stinnett Mot. at 16-17.) Stinnett advances a similar argument against Gray's state law malicious prosecution claim. (Stinnett Mot. at 14-15.)

With respect to the § 1983 claim, Stinnett argues that, because the underlying conviction was not "reversed on direct appeal, expunged by executive order, declared invalid by a state

tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus," a § 1983 claim is not cognizable.[3]  (Stinnett's Mot. at 16 (quoting Heck v. Humphrey, 512 U.S. 477, 487 (1994))).

For the purposes of the state law malicious prosecution claim, Stinnett argues that Gray's allegation that he was granted a new trial by the Circuit Court cannot qualify as a "termination of the proceedings in favor of the plaintiff."  (Stinnett's Mot. at 14-15.)  According to Stinnett,

> [t]he fact that the State has now convicted someone for actually raping or murdering Ms. Pellicano does not establish that Plaintiff was not involved.  It appears from the allegations in the [Amended] Complaint that Plaintiff was awarded a new trial on evidentiary grounds, but this alone is insufficient to establish that the matter was resolved in Plaintiff's favor.

(Stinnett's Mot. at 15.)

Section 1983 creates a civil action for the deprivation of rights guaranteed by the Constitution by persons acting under color of state law.  42 U.S.C. § 1983.  The Supreme Court and the Fourth Circuit have held repeatedly that § 1983 claims such as those alleged in this case incorporate the elements of certain common-law causes of action.  See Heck, 512 U.S. at 483-86; Lambert, 223 F.3d at 260-62; Brooks, 85 F.3d at 181-82.  Because both of Stinnett's arguments turn on whether the State's decision not to retry Gray is a favorable termination of Gray's state prosecution, and because the § 1983 analysis borrows heavily from common law, the court will consider Stinnett's arguments against the § 1983 malicious prosecution claim and the state law malicious prosecution claim together.

---

[3]      The Amended Complaint is unclear, but Gray's conviction may have been "declared invalid by a state tribunal authorized to make such a determination."  Heck v. Humphrey, 512 U.S. 477, 487 (1994).  A state court did grant Gray a new trial; presumably that court also vacated his conviction.  (Am. Comp. ¶ 43.)  For the purposes of this motion, the court will assume, without deciding, that Stinnett correctly characterizes the facts.

9

As the Supreme Court has pointed out, the prior termination requirement serves two main purposes. First, the requirement avoids parallel litigation over the issues of probable cause and guilt. Heck, 512 U.S. at 484  Second, the requirement eliminates the cause of action as a vehicle to collaterally attack the underlying criminal prosecution. Id. at 484-85. Neither of those concerns are immediately at issue in the current case so long as the Amended Complaint has accurately portrayed the history of Gray's criminal prosecution, because the state criminal proceedings are complete.

Further, Section 659 of the (Second) Restatement of Torts states that, in a malicious prosecution action, proceedings are terminated in favor of the accused upon "the formal abandonment of the proceedings by the public prosecutor." [4] Restatement (Second) Torts, § 659(c). That is, in effect, what Gray has alleged here: that upon the granting of a new trial, the prosecutor abandoned any further prosecution. Whether the prosecution was actually abandoned, and how "formal" the abandonment was, are issues that can be raised at summary judgment, if they are relevant. Thus, Stinnett's motion to dismiss Count I and the malicious prosecution aspect of Count VII will be denied.

Although the issue was not raised by the parties, the court notes that Gray's § 1983 malicious prosecution claim appears viable only to the extent that he was wrongfully arrested and detained for the period prior to his initial appearance before a neutral magistrate. As the Brooks court discussed, although the common law tort of malicious prosecution provides a remedy for wrongs committed before and after an appearance before a neutral magistrate, the Fourth

---

[4]    The Court of Appeals has indicated that Maryland follows the Restatement (Second) of Torts on the issue of what constitutes termination in favor of the accused in a malicious prosecution case. See Banks v. Montgomery Ward & Co., 128 A.2d 600, 604 (Md. 1957); see also State v. Meade, 647 A.2d 830, 838-39 (Md.App. 1994).

Amendment only applies to seizures before such an appearance. Brooks, 85 F.3d at 184.

Because the Fourth Amendment is the only constitutional provision implicated by a § 1983

malicious prosecution claim, id., even malfeasance that would normally implicate a common law

malicious prosecution claim, such as the continuation of a prosecution without reasonable cause

but after an initial appearance, is not actionable under § 1983. See id. at 183-84. Recovery for

the § 1983 malicious prosecution claim against all defendants may therefore be limited,

consistent with the Brooks and Lambert opinions, but counsel will be permitted further briefing

on this issue at the appropriate time.

3.    Qualified Immunity for § 1983 Claims

In their motions, both the Joint Movants and Stinnett argue that they are entitled to

qualified immunity because Gray has failed to allege a constitutional violation. (Joint Mot. at

12-13; Stinnett Mot. at 11-14.) When evaluating a claim of qualified immunity, the court must

identify the specific constitutional right allegedly violated, and then determine whether that right

was "clearly established," and whether a reasonable person in the defendant's position would

have understood that his or her actions would violate that right. Gould v. Davis, 165 F.3d 265,

269 (4th Cir. 1998). Although the time line set forth in Gray's Amended Complaint is not a

model of clarity, the court finds that, looking to the Amended Complaint as a whole, Gray has

sufficiently alleged a Fourth Amendment violation. Not only does the Amended Complaint as a

whole raise the question whether probable cause existed at the time Gray was taken into custody,

but it specifically alleges that "throughout" the investigation of Gray, "defendants had no rational

reason to believe that Gray had committed the crime." (Am. Compl. ¶ 61.) It is clearly

established that to hold someone without probable cause is a violation of the Fourth Amendment.

At this stage in the proceedings, the allegation that the individual defendants detained Gray

11

without probable cause is sufficient to establish that a clearly established constitutional right has been violated.[5]

        4.     Section 1983 and the County

Finally, the County argues that Gray has failed to allege a § 1983 claim against it because he has failed to allege a custom, practice, or policy of the County government that was the proximate cause of the constitutional violation. (Board Mot. at 4-7.) The Board is correct that only by proving such involvement can a municipality be held liable under § 1983. See Monell v. Dept. of Social Services, 436 U.S. 658, 691 (1978) ("[T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). In response, Gray has moved the court to grant him leave to amend to make such an allegation if the court finds the complaint deficient. (Gray Opp. to Board's Mot. at 7.) Because the proposed Second Amended Complaint asserts that the alleged actions and omissions conformed to the County's policies, customs, or practices, the proposed Second Amended Complaint will be accepted for filing, and the County's motion to dismiss will be denied at this point.

For the reasons described in Marryshow v. Town of Bladensburg, 139 F.R.D. 318 (D. Md. 1991), however, the claims against the County based on their alleged custom or policy will be bifurcated from the rest of the issues in this case and stayed until the other claims have been

---

[5] This conclusion is also dispositive of Gray's claim under Art. 24 of the Maryland Declaration of Rights. Although Stinnett argues that Gray has failed to plead an Art. 24 claim, (Stinnett Mot. at 18-19), because Art. 24 is in pari materia with the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution with respect to issues dealing with deprivation of life, liberty, or property, Gray has sufficiently plead an Art. 24 claim. See Widgeon v. Eastern Shore Hosp. Ctr., 479 A.2d 921, 927-28 (Md. 1984).

resolved.  As in <u>Marryshow</u>, proof of any liability for the County based on a custom or policy requires a showing that there was a civil rights violation by one of the other defendants.  <u>See</u> <u>id.</u> at 319.  In addition, as in <u>Marryshow</u>, proof of a custom or policy by the County will likely require the plaintiffs to introduce evidence that would be irrelevant to the liability of the other defendants.  <u>See</u> <u>id.</u> at 319-20.  Therefore, to maximize efficiency and convenience, and minimize unfair prejudice and delay, the proceedings will be bifurcated, and discovery on the claims which require proof that Gray was injured by the custom or policy of the County will be stayed until Gray's other claims have been resolved.

      B.     Fourteenth Amendment Claim

In his Amended Complaint, Gray claims that he was deprived of his liberty without due process of law.  (<u>See</u> Am. Compl. ¶ 78.)  While Gray brings a claim under section 42 U.S.C. § 1983 in Count VII to vindicate and remedy the alleged violation of his constitutional rights, he also brings actions for damages directly under the Fourteenth Amendment (Count V).  Although a direct action for damages based on certain constitutional provisions may be had against federal officials and agents, <u>see</u> <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), there is no such action for damages available against a state or municipality.  <u>See</u> <u>Cale v. City of Covington</u>, 586 F.2d 311, 313 (4th Cir. 1978); <u>Farmer v. Ramsay</u>, 41 F. Supp. 2d. 587, 591 (D. Md. 1999).  To the extent that any claim directly under the Fourteenth Amendment may be viable against the individual defendants, it is coextensive with the § 1983 claim in Count VII.  Therefore, Count V will be dismissed.

      C.     42 U.S.C. § 1981

Gray alleges that the defendants pursued an investigation against him because of his race in violation of 18 U.S.C. § 1981.  The defendants have moved to dismiss the claim, arguing that

§ 1981 reaches only race discrimination in contractual relationships. The defendants' motion to dismiss Gray's § 1981 claim will be denied without prejudice.

Section 1981 in relevant part reads:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licences, and exactions of every kind, and to no other. 42 U.S.C. § 1981(a).

Whether § 1981 applies to racially motivated misuse of government power is unclear. The Supreme court has noted that, with respect to § 1981, "[t]he most obvious feature of the provision is the restriction of its scope to forbidding discrimination in the 'mak[ing] and enforce[ment]' of contracts alone. Where an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief." Patterson v. McLean Credit Union, 491 U.S. 164, 176 (1989). It is not clear, however, whether "the provision" referred to in this quotation is § 1981 as a whole or only the "make and enforce contracts" clause, since Patterson involved only whether discrimination in the execution of an existing contract states a claim under § 1981. Id. at 177 (holding that § 1981's "make or enforce contracts" language does not extend to conduct that happened "after the contract relation has been established"). In short, Patterson dealt only with the contract provisions of § 1981. Thus, whether the "full and equal benefit" language in § 1981 has any force may not be addressed by the Supreme Court's opinion in Patterson. Cf. id. at 176 (noting that "the relevant provision" of § 1981 for the purpose of that case dealt with contract rights).

The First, Third, and Seventh Circuits have held that § 1981 does reach government misconduct which is based on race. Alexis v. McDonald's Restaurants of Mass., Inc., 67 F.3d

14

341, 348 (1st Cir. 1995) ("[M]isuse of government power motivated by racial animus falls squarely within the 'equal benefit' and 'like punishment' clauses of § 1981(a)."); Hall v. Pennsylvania State Police, 570 F.2d 86, 91 (3rd Cir. 1978) ("Racially motivated misuse of governmental power falls within the ambit of [§ 1981's] 'equal benefit' and 'like punishment' clauses . . . ."); Bell v. City of Milwaukee, 746 F.2d 1205, 1232 (7th Cir. 1984) (holding that § 1981 applies to "racially motivated misuse of government power" in a police misconduct case) (quoting Hall, 570 F.2d at 91). The Fourth Circuit has not yet considered the issue.[6]

Even if it is possible to state a claim for race based government misconduct under § 1981, Gray has only barely plead one. Gray has alleged that the defendants' actions "were motivated due to racial discrimination, prejudice and animus toward Gray." (Am. Compl. ¶ 96). However, the facts alleged which support this are only that Gray and the others investigated for the murder and rape of Linda Pellicano are African-American, while the individual Defendants are white, (Id. ¶ 1, 4-6, 14), and that one element of exculpatory evidence was that while some Caucasian hairs were found at the scene, "no Negroid hairs of any kind [were found], thereby excluding Gray . . . ." (Id. ¶ 29). Though the standard for a pleading in the Federal Rules is not stringent, this does not unambiguously meet it.

Since the legal issue whether racially discriminatory government action unrelated to contract rights states a claim under § 1981 is unclear, and the sufficiency of the facts alleged is minimal, the defendants' motion to dismiss Count VIII will be denied without prejudice. This issue may be more fully addressed at the summary judgment stage.

---

[6]     The Fourth Circuit more typically considers § 1981 cases which involve claims of employment discrimination, e.g., Spriggs v. Diamond Auto Glass, 242 F.3d 179 (2001), or claims of discrimination in the conduct of contracting for goods or services, e.g., Duane v. GEICO, 37 F.3d 1036 (1994).

15

II.    State Law Claims

Since there are federal claims remaining in this case, the court must consider the

defendants' motions to dismiss with respect to Gray's state law claims.

A.    Eleventh Amendment Immunity

As an initial matter, these claims against the State must be dismissed on the ground of

Eleventh Amendment sovereign immunity.  Eleventh Amendment immunity cannot be defeated,

as Gray asserts, simply through the invocation of supplemental or pendent jurisdiction.

Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 120-21 (1984).  Counts I-IV against

the State will therefore be dismissed.

Among the individual defendants, Stinnett argues that the state law claims against him

are also barred by the Eleventh Amendment, at least in so far as they are brought against him in

his official capacity as Sheriff.  (Stinnett's Mot. at 7-9.)  As he correctly points out, the Eleventh

Amendment protects not only states themselves, but also state officers acting in their official

capacities.  Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995).  Stinnett also correctly points out

that, under Maryland law, sheriffs and deputy sheriffs are state officers.  Rucker v. Harford

County, 558 A.2d 399 (Md. 1989).  Gray acknowledges that, for purposes of Eleventh

Amendment immunity, Stinnett is a state officer.  (Stinnett Opp. at 7).  See also Levinson-Roth

v. Parries, 872 F. Supp. 1439, 1447 (D. Md. 1995).  Therefore, Counts I-IV against Stinnett in

his official capacity are dismissed.

B.    False Arrest and False Imprisonment

Defendants argue that the Counts II and III, for state law false arrest and false

imprisonment, should be dismissed because (1) Gray provided inadequate notice under the

Maryland Tort Claims Act, and (2) the statute of limitations on these actions has run.

1.    Notice under the Maryland Tort Claims Act

In order for a plaintiff to bring a claim against the State or a state officer under the

MTCA, certain notice requirements must be met. Specifically, under the MTCA, a claimant

must submit a written claim to the Treasurer of the State of Maryland within one year of the date

of injury to person or property. Md. Code Ann., State Gov't, § 12-106(b)(1).[7] Timely filing of

the claim with the State Treasurer's Office is a condition precedent to bringing an action under

the MTCA. See Haupt v. State, 667 A.2d 179, 183 (Md. 1995); Simpson v. Moore, 592 A.2d

1090, 1091-92 (Md. 1991). The Joint Movants argue that Gray failed to comply with this notice

requirement, and thus cannot prevail on his false arrest and false imprisonment claims against

them. (Joint Mot. at 6-7.) Specifically, the joint movants argue that because notice was not

provided until October 27, 1999, more than eight years after Gray's initial arrest, the notice was

untimely as to the false arrest and false imprisonment claims.[8] (Joint Mot. at 5-7.) The joint

movants are correct in this regard, and Counts II and III will be dismissed as to Newcomer and

Sheldon for this reason.[9]

According to the Court of Appeals, an injury "arises" for the purpose of the MTCA when

all of the "'legally operative facts' permitting the filing of the claim [come] into existence."

---

[7] Prior to 1995, the deadline was 180 days after the injury.

[8] The joint movants do not argue, nor does Stinnett, that notice was untimely for purposes of the malicious prosecution claim (Count I). A malicious prosecution claim does not accrue until the underlying prosecution has been resolved in the plaintiff's favor, which in this case was in February 1999, less than a year before notice was given in October 1999. See Heron v. Strader, 761 A.2d 56, 59-62 (Md. 2000).

[9]     Improper notice under the MTCA would also have served as an appropriate reason to dismiss Counts II and III against the State and Stinnett in his official capacity, but those claims have already been dismissed on Eleventh Amendment grounds.

Heron v. Strader, 761 A.2d 56, 58 (Md. 2000) (quoting Haupt v. State, 667 A.2d 179, 185 (Md. 1995)).  Therefore, the injury arises when the cause of action arises.  Id. at 59.  "In order to determine when [plaintiff's] causes of action arose, we must examine the elements of the cause of action, since, under [Court of Appeals] precedents, a cause of action is said to have arisen 'when facts exist to support each element.'"  Heron, 761 A.2d at 59 (quoting Owens-Illinois v. Armstrong, 591 A.2d 544, 556 (Md.App. 1991)).

Here, the elements of false arrest and false imprisonment are identical: 1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification.  Heron, 761 A.2d at 59.  Gray argues that, rather than accruing on the date of arrest or imprisonment, a cause of action for false arrest or false imprisonment accrues on the date that his detention ceased, to wit, on February 9, 1999.  (Pl's Opp. at 10.)  According to the Court of Appeals, however, a cause of action for false arrest or false imprisonment accrues on the date of the arrest.  Heron, 761 A.2d at 59.  False arrest and false imprisonment are evaluated under "the principles applicable to the law of arrest."  Id. (quoting Montgomery Ward v. Wilson, 664 A.2d 916, 926 (Md. 1995)).  "[W]here the basis of a false imprisonment action is an arrest by a police officer, the liability of the police officer for false imprisonment will ordinarily depend upon whether or not the officer acted within his legal authority to arrest."  Id. (quoting Montgomery Ward, 664 A.2d at 926).  As in Heron, where the Court of Appeals held that the cause of action for false arrest and false imprisonment accrued on the date of arrest and not the date of the plaintiff's acquittal, here, those causes of action accrued on the date that Gray was first taken into custody because the facts required to support each element of his claims came into existence at that time.

2.    Statute of Limitations

Finally, not only did Gray miss the deadline to file notice with the Treasurer of Maryland,

but because his causes of action on Counts II and III accrued in 1991, the three-year statute of

limitations on these claims has run as against all parties, whether the party is sued in his official

or individual capacity. Md. Code Ann., Courts & Jud. Proc., § 5-101. Therefore, Counts II and

III of Gray's Amended Complaint will be dismissed as to all defendants in both their official and

personal capacities.[10]

  B.  Malicious Prosecution

  Defendants raise several arguments why Gray's state law malicious prosecution claim

should be dismissed. First, Stinnett argues that Gray has failed to state a claim upon which relief

may be granted because he has failed to allege an essential element of a malicious prosecution

claim - that there was a criminal proceeding that was resolved in Gray's favor. (Stinnett Mot. at

14-15.) As described supra, the court rejects the argument that the proceedings have not been

terminated in Gray's favor for the purposes of a state law malicious prosecution claim.

  The Joint Movants further argue that Newcomer and Sheldon are entitled to statutory

immunity for the malicious prosecution claim under the MTCA. According to the MTCA

> State personnel . . . are immune from suit in courts of the State and from liability
> in tort for a tortious act or omission that is within the scope of the public duties of

---

[10] Stinnett argues in his motion that because Gray did not specifically allege compliance
with the MTCA's notice provisions, Counts I-IV should be dismissed. Citing Maryland cases
that stand for the proposition that compliance with the MTCA's notice provisions must be
alleged as a substantive element of the cause of action, see Neuenschwander v. Washington
Suburban Sanitary Comm'n, 48 A.2d 593, 598 (Md. 1946), and Madore v. Baltimore County,
367 A.2d 42, 56 (Md. 1976), Stinnett argues that the failure to allege compliance requires that the
court dismiss the state law claims. (Stinnett Mot. at 6.) It appears to be true that Gray did not
specifically mention his October 1999 notice in his Amended Complaint. Nonetheless, without
even considering whether the state cases cited comport with the federal notice pleading standards
that this court is bound to follow, see, e.g., Swierkiewicz v. Sorema, 534 U.S. ___, 122 S. Ct.
992, 998-99 (2002), the court finds that the Joint Movants have admitted in their own motion that
notice was given on October 27, 1999, and thus any failure by Gray to plead compliance has
been rendered moot. (See Joint Motion at 7.)

the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver.

Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). Defendants argue that Gray has failed to allege

facts through which the court may infer that the individual defendants acted with malice. (Joint

Mot. at 7-9; Stinnett Mot. at 9-10.) Gray does not allege gross negligence in this case, so the

analysis will focus on whether he has alleged malice. In order to defeat immunity under the

MTCA, the plaintiff must prove that the defendant acted with "actual malice," which is

characterized "by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing,

ill will or fraud." Shoemaker v. Smith, 725 A.2d 549, 559 (Md. 1999) (quoting Montgomery

Ward, 664 A.2d at 930 n.5); see also Okwa v. Harper, 757 A.2d 118, 128-29 (Md. 2000).

Both the Joint Movants and Stinnett cite to Maryland cases that they argue stand for the

proposition that Gray must allege specific facts upon which malice may be inferred, in order to

survive a motion to dismiss. See, e.g., Elliott v. Kupferman, 473 A.2d 960, 969 (Md.App. 1984);

see also Green v. Brooks, 725 A.2d 596, 611 (Md. App. 1999). Regardless of whether the

Maryland cases actually require specific fact pleading as defendants suggest,[11] this court, as

mentioned above, is bound by federal rules of pleading. Thus, while it is correct that a plaintiff

must plead more than naked legal conclusions, Gardner v. First Am. Title Ins. Co., 294 F.3d 991,

994 (8th Cir. 2002), neither is it true that Fed.R.Civ.P. 8(a) requires specific fact pleading except

in cases of fraud or mistake. Swierkiewicz v. Sorema, 534 U.S. __, 122 S. Ct. 992, 998 (2002).

Rather, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under

any set of facts that could be proved consistent with the allegations." Swierkiewicz, 534 U.S. at

---

[11] The Maryland cases appear to simply state that a plaintiff must plead more than legal conclusions, which is consistent with the federal pleading standard.

___,122 S. Ct. at 998 (quoting, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).[12]

In this case, Gray has adequately alleged facts to survive a motion to dismiss on the malice factor. To begin with, Gray states in the Amended Complaint that the defendants were motivated by "malicious, fraudulent and false intentions," and "ill will, improper motivation or an evil purpose, and "actual malice." (Am. Compl. ¶¶ 47, 57 & 58.) These allegations, by themselves, would likely be insufficient as they are essentially legal conclusions. The Amended Complaint, however, makes at least two allegations which, if facts consistent with them are proven, may establish the required malice to defeat immunity under the MTCA. First, Gray has alleged that defendants improperly took advantage of his mental disability and coerced Gray to confess to a crime that he did not commit. (Id. ¶¶ 18, 21-23.) Second, Gray alleges that defendants proceeded with his prosecution after they had discovered several types of exculpating evidence. (Id. ¶¶ 25-31.) These factual allegations suggest that defendants acted with malice toward Gray. For that reason, the court rejects Defendants' arguments that the MTCA provides statutory immunity against the state law malicious prosecution claim at this point.

III.    Conclusion

The court will grant the State of Maryland's motion to dismiss with respect to Counts I-V, and acknowledges that Gray has withdrawn Counts VI and VII against the State. Therefore, the remaining Count against the State of Maryland is Count VIII.

Further, the court will dismiss Counts I and IV against Stinnett in his official capacity. The court will dismiss Counts II, III, and V against Stinnett, Newcomer, and Sheldon in both

---

[12] The Supreme Court has also rejected, in the context of § 1983 claims against municipalities, the proposition that a heightened pleading standard exists. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993).

their official and individual capacities. The court will further dismiss any claims under Count VII against Stinnett, Sheldon, and Newcomer based on a false arrest theory. The court acknowledges that Gray has withdrawn Counts VI and VII against Stinnett, Sheldon, and Newcomer in their official capacities. The claims remaining against Stinnett then are Counts I and IV, and a malicious prosecution claim under Count VII, in his individual capacity, and Count VIII. The remaining claims against Sheldon and Newcomer are Counts I, IV and VIII in their individual and official capacities, and Count VII on a § 1983 malicious prosecution theory in their individual capacities.

Finally, Counts II, III, V, and parts of Count VII against Calvert County will be dismissed. The court acknowledges that Gray has withdrawn Count VI against the County. The Counts remaining against Calvert County are Counts I, IV, and VIII, and Count VII on a malicious prosecution theory. In addition, the claims against the County that depend on proof that Gray's injuries were caused by a policy or custom of the County will be bifurcated and stayed pending the resolution of Gray's other claims.

A separate Order follows.

9/18/02
Date

Catherine C. Blake
United States District Judge

22