# Exhibit "B"

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 1

```
1    ANTHONY GRAY                  *   IN THE U.S. COURT

2              Plaintiff           *   FOR THE DISTRICT

3    vs.                           *   OF MARYLAND

4    STATE OF MARYLAND, et al      *   No.  CCB-02-CV-385

5              Defendants

6

7              *    *    *    *    *    *

8

9    Deposition of:      BRIAN NEWCOMER

10

11             Pursuant to notice, the deposition was

12   taken on April 3, 2003, at 2060 West Street,

13   Annapolis, Maryland, commencing at approximately

14   10:30 a.m., before Connie E. Bennett, a Notary

15   Public.

16

17

18

19

20

21
```

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 2

```
 1    APPEARANCES:
 2
 3                    JOEL L. KATZ, ESQUIRE
                      The Katz Building
 4                    2060 West Street
                      Annapolis, Maryland 21401
 5                    410-841-5333
 6                    In Behalf of the Plaintiff
 7
                      DONALD E. HOFFMAN, ESQUIRE,
 8                    Assistant State's Attorney
                      Maryland State Police
 9                    1201 Reisterstown
                      Pikesville, Maryland 21208
10                    410-653-4227
11                    In Behalf of the Defendant
12
13
14
15
16
17
18
19
20
21
```

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 3

1                Index of Examinations

2                                                              PAGE

3   Mr. Katz ................................................ 4

4                       -   -   -

5                   Index of Exhibits

6                                                              PAGE

7   Exhibit No. 1 .......................................... 16

8   Exhibit No. 2 .......................................... 24

9   Exhibit No. 3 .......................................... 32

10  Exhibits No. 4 and 5 ................................... 48

11  Exhibit No. 6 .......................................... 58

12  Exhibit No. 7 .......................................... 84

13  Exhibit No. 8 .......................................... 86

14  Exhibit No. 9 .......................................... 94

15  Exhibit No. 10 ........................................ 105

16  Exhibit No. 11 ........................................ 118

17  Exhibit No. 12 ........................................ 135

18                      -   -   -

19

20

21

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 4

1                P R O C E E D I N G S

2    Whereupon:

3                    BRIAN NEWCOMER,

4    was called on for examination by counsel, and after

5    being duly sworn according to law was examined and

6    testified as follows:

7              EXAMINATION BY COUNSEL FOR PLAINTIFF

8              MR. KATZ:  Before we start, I want to let

9    everybody know, I plan on keeping this deposition

10   open until I discern the discoverable information

11   with regard to personnel records, as well as full

12   answers to their interrogatories.  I talked to you on

13   the phone about getting appropriate answers.

14             In addition to that, I want to put on the

15   record that I will not tolerate being threatened on

16   my own parking lot.

17             MR. STINNETT:  You weren't threatened.

18             MR. KATZ:  Wait a minute.  You come here,

19   I offered to give you a cup of coffee, and let you

20   sit inside.  Don't tell me you're going to get even

21   with me, and you are not putting up with this shit,

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 18

1   to, I believe June 20, 1999, the date that Anthony

2   Gray was arrested by you.

3       A.   Yes, sir.

4       Q.   And you were the one who arrested him; is

5   that correct?

6       A.   Yes, sir.

7       Q.   And who else was with you when you

8   arrested him?

9       A.   I don't recall.

10      Q.   You don't recall.  Is it safe to say that

11  these were the protocols that you followed with

12  regard to the arrest and the interrogation of Anthony

13  Gray?

14      A.   Yes, sir.

15      Q.   And these are the protocols that you would

16  have filled with regard to protecting his civil

17  rights; is that correct?

18      A.   Yes, sir.

19      Q.   And is it safe to say that during the

20  period of time that you interrogated Anthony Gray,

21  from June up until August the 6th, that you made sure

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 31

1  came from a canvas from a roadblock, and people
2  passing through there.  I don't recall any
3  information leaving the house, to that nature.
4      Q.    Well, you were involved in the
5  investigation; is that correct?
6      A.    Yes, sir.
7      Q.    And you would agree with me, as part of
8  your investigation, and as part of the procedures you
9  were taught, both in the Maryland State Police
10 Training Academy, and your continuing education, that
11 you would review periodic reports that would come in
12 from other troopers that are also investigating this
13 case, so that you can be on top of everything; isn't
14 that a fair statement?
15     A.    Yes, sir.
16     Q.    Now, there came a point in time that you
17 arrested Anthony Gray?
18     A.    Yes, sir.
19     Q.    And was that arrest based upon a warrant?
20     A.    No, sir.
21     Q.    What was it based upon?

1       A.      Probable cause.

2       Q.      And what was the basis of your probable
3   cause to arrest him?

4       A.      It was outlined in a statement of charges
5   dated June 21, 1991.

6       Q.      And do you have that with you?

7       A.      No, sir.

8       Q.      And who has those records?

9       A.      The Court, the Circuit Court for Calvert
10  County.

11                      (Exhibit No. 3
12                      was marked for identification.)

13      Q.      Okay.  Before this, I want to ask one
14  other thing.  In Deposition Exhibit No. 1, can you
15  indicate to me -- never mind --

16              MR. KATZ:  Here you go, gentlemen.

17              All right, Mr. Hoffman.

18              (Pause)

19              BY MR. KATZ:

20      Q.      Now, you indicated that they were
21  contained in the statement of probable cause, or the

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 33

1  District Court statement of charges; is that correct?

2     A.   Yes, sir.

3     Q.   And in order to take these charges out,
4  you have to file what is known as an affidavit of
5  probable cause; isn't that correct?

6     A.   Yes, sir.

7     Q.   And what that affidavit means is that you
8  were swearing, or affirming, under oath, that the
9  statements contained therein are true and correct; is
10 that correct?

11    A.   Yes, sir.

12    Q.   And as a matter of fact, I will show you
13 Exhibit No. 3, and ask you, is this your signature
14 under the affirmation?

15    A.   It is.

16    Q.   And it states that: I solemnly affirm,
17 under the penalties of perjury, that the matters and
18 facts set forth in the foregoing document are true,
19 to the best of my knowledge, information, and belief;
20 is that correct?

21    A.   Yes, sir.

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 34

1   Q.   Now, prior to taking out these charges,
2   and prior to filing your affidavit of probable cause,
3   did you have an opportunity to review the reports and
4   information filed by other Troopers and/or Sheriffs
5   working on this case?
6   A.   Yes, sir.
7   Q.   Now, Charge Number 1, you say that he
8   feloniously, willfully, deliberately, and
9   maliciously, killed and murdered Linda May Pellicano;
10  is that correct?
11  A.   Yes, sir.
12  Q.   Did you have any information that would
13  support that he was the one that killed or murdered
14  Linda May Pellicano?
15  A.   Yes, sir.
16  Q.   What would that be?
17  A.   It's in that document.
18  Q.   Tell me what it is.
19  A.   Gray initially denied involvement in the
20  crime. He later admitted to walking down the roadway
21  of Dalrymple Road at Christiana Parran Road, at

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 35

1   approximately 1100 hours on the date of this

2   incident. Gray further stated that Holland and Long

3   were the persons that had contacted him, and they

4   told him that they were going to get some money, and

5   wanted him to act as a lookout.

6          Gray said that he stood near the stop sign

7   at the intersection and observed Holland and Long

8   walk around the north end of the victim's residence

9   and go to the rear of the residence. He stated he

10   stood lookout at that location approximately 15

11   minutes and observed the victim's vehicle pull into

12   the driveway.

13          He then ran down Christiana Parren Road

14   away from the victim's residence.

15          Defendant has a history of criminal

16   activity, to include breaking and entering, and a CDS

17   violation.

18      Q.   All right. Now, the question I asked you

19   is, that you charged him with murdering her. I mean,

20   it was quite specific: Did break into the Pellicano

21   -- I am sorry -- did willfully, deliberately, and

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 80

1  the Maryland State Police, with regard to your having

2  a defendant prior to interrogation sign the form of

3  advice to rights?

4     A.   There was none.

5     Q.   There was no procedure.  Well, did you

6  have a procedure that you followed with regard to

7  advising a defendant of his rights before

8  interrogation?

9     A.   Yes, sir.

10    Q.   And was it your practice and procedure to

11 have that individual sign a paper?

12    A.   I don't recall.

13    Q.   Of advice of rights?

14    A.   I don't recall at that time.

15    Q.   Whatever or, do you take to, when you,

16 what was your normal procedure in '91, with regard to

17 advising somebody in custodial custody as to their

18 Miranda Rights, what would you do?

19    A.   Read it to them from a laminated card.

20    Q.   What else would you do?

21    A.   Ask them if they understood.

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 81

1    Q.    Anything else?

2    A.    No, sir.

3    Q.    And when you asked them if they

4    understood, how would you do that, what would you

5    have done?

6    A.    Just asked them if they understood each

7    section of it.

8    Q.    And to preserve the integrity of the

9    Miranda Warning, what, if anything else, would you

10   do, if anything?

11   A.    Nothing else to do.

12   Q.    Well, would you make any file notes that

13   the individual was advised of the Miranda warnings?

14   A.    Normally, the statement is recorded right

15   into the statement.

16   Q.    Show me where it's recorded in this

17   statement on June 21st.

18   A.    Anthony, you have already been advised of

19   your rights, and you indicated that you understood,

20   and that you were willing to make a statement.

21   Q.    The question is, as I asked you, where the

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 82

1   rights themselves were recorded in this statement?

2        A.    No, sir.

3        Q.    They weren't?

4        A.    No, sir.

5        Q.    But, it's your statement to me that
6   normally the rights would have been incorporated in
7   the statement delineating each right?

8        A.    No, sir.

9        Q.    Maybe I misunderstood you. It doesn't
10  indicate anywhere as to the rights that you advise
11  them. Is that fair to say, in this statement?

12       A.    Yes, sir, that is fair.

13       Q.    And it doesn't indicate the manner in
14  which you asked him, whether or not he understood
15  those rights?

16       A.    I don't understand, manner.

17       Q.    Well, my question to you is, did you just
18  read him his rights and say to him, do you understand
19  everything I read to you, and if he says, yes, you
20  proceed on with the statement. Is that the way it's
21  done?

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 3, 2003

Page 110

1                 Afternoon Session

2        BY MR. KATZ:

3        Q.    Would it be correct to say that you were

4 the primary investigator on Anthony Gray's case?

5        A.    Yes, sir.

6        Q.    Do you recall how many times you met with

7 him between June 21st, when he gave the first

8 statement, and the second statement on August the

9 6th, 1991?

10       A.    That would have been it.

11       Q.    That would have been it?

12       A.    Yes, sir.

13       Q.    Were you present when Sheldon was there

14 for the second statement?

15       A.    Yes, sir.

16       Q.    Did you discuss the facts of the case with

17 Sheldon beforehand?

18       A.    I am sure.

19       Q.    And he would not have known what questions

20 to ask if he had not discussed it with you

21 beforehand. Would that be a fair statement?