**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ANTHONY GRAY                                    *

     Plaintiff                              *

v.                                              *        Civil Action No. CCB-02-CV-385

STATE OF MARYLAND, et al.                       *

     Defendants                             *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CALVERT COUNTY'S AND LAWRENCE STINNETT'S MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

CALVERT COUNTY and LAWRENCE STINNETT, two of the Defendants, by ALLEN,

KARPINSKI, BRYANT & KARP, KEVIN KARPINSKI and MATTHEW PETER, their attorneys,

respectfully submit this memorandum in support of their Motion for Summary Judgment.

**TABLE OF CONTENTS**

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-41

    I        STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

    II.      PLAINTIFF'S STATE LAW CLAIMS AGAINST THE COUNTY SHOULD BE
           DISMISSED FOR FAILURE TO PROVIDE NOTICE UNDER THE LOCAL
           GOVERNMENT TORT CLAIMS ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-15

    III.     SHERIFF STINNETT IS NOT A COUNTY EMPLOYEE FOR PURPOSES OF
           STATE LAW CLAIMS AND, THUS, THE COUNTY MAY NOT BE HELD
           VICARIOUSLY LIABLE UNDER COUNTS I AND IV . . . . . . . . . . . . . . . . . . . . . . . 15

IV    THE COUNTY IS ENTITLED TO GOVERNMENTAL IMMUNITY ON PLAINTIFF'S COMMON-LAW MALICIOUS PROSECUTION CLAIM . . . . 16-18

V    SHERIFF STINNETT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM (COUNT I) . . . . . . . . . 18-22

    A.    Plaintiff Cannot Establish the First Element of his Malicious Prosecution Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

    B.    Plaintiff Cannot Establish the Third Element of his Malicious Prosecution Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-22

    C.    Plaintiff Cannot Establish the Fourth Element of his Malicious Prosecution Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VI    SHERIFF STINNETT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MARYLAND DECLARATION OF RIGHTS CLAIM (COUNT IV) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

VII    SHERIFF STINNETT IS ENTITLED TO STATUTORY IMMUNITY ON PLAINTIFF'S STATE LAW CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-26

VIII    SHERIFF STINNETT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S 42 U.S.C. § 1983 MALICIOUS PROSECUTION CLAIM (COUNT VII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-31

IX    SHERIFF STINNETT IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S 42 U.S.C. § 1983 MALICIOUS PROSECUTION CLAIM . . . . . 31-35

X    PLAINTIFF'S § 1981 IS BARRED BY THE STATUE OF LIMITATIONS . . . . . . . 36

XI    THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S 42 U.S.C. § 1981 CLAIM (COUNT VIII) . . . . . . . . . . . . . . . . . 36-37

XII    SHERIFF STINNETT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S 42 U.S.C. § 1981 CLAIM (COUNT VIII) . . . . . . . . . . . . . . . . . 37-41

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

ii

# TABLE OF AUTHORITIES

## CASES

Albright v. Oliver, 510 U.S. 226 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 34

Alston v. Robinson, 791 F. Supp. 569 (D. Md. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Anderson v. Creighton, 483 U.S. 635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 34

Asuncion v. City of Gaithersburg, 73 F.3d 356, 1996 WL 1842, *2
    (4th Cir. 1996) (unpublished)(attached hereto as Exhibit Q) . . . . . . . . . . . . . . . . . . . 26, 28

Austin v. City of Baltimore, 286 Md. 51, 405 A.2d 255 (1979) . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Bey v. Brigeton Police Department, 775 F. Supp. 1255 (E.D. Mo. 1991) . . . . . . . . . . . . . . . . . 30

Bibum v. Prince George's County, 85 F.Supp.2d 557 (D.Md. 2000) . . . . . . . . . . . . . . . . . . . . . 13

Boyer v. State, 393 Md. 558, 594 A.2d 121 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Branch v. McGeeney, 123 Md. App. 330, 718 A.2d 631 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . 23

Brewer v. Mele, 267 Md. 437, 298 A. 2d 156 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 27

Brew v. City of Emeryille, 138 F. Supp. 2d 1217 (N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . 37

Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 26, 31, 36

Brown v. Ameritch, 1997 WL 43224, *6 (N.D. Ill. 1997) (copy attached hereto as Exhibit S) . . 38

Caldor, Inc. v. Bowden, 330 Md. 632, 625 A.2d 959 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 27

Cameron v. Fogarty, 806 F.2d 380 (2nd Cir. 1986) cert. denied, 481 U.S. 1016 (1987) . . . . . . 28-30
Candelero v. Cole, 152 Md. App. 190, 831 A.2d 495 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Carter v. Jess, 179 F. Supp. 2d 534 (D. Md. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

iii

Collinson v. Gott, 895 F.2d 994 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Crowley v. Prince George's County, 890 F.2d 683 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 37

Delaware State College v. Ricks, 449 U.S. 250 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Dennis v. County of Fairfax, 55 F. 3d 151 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

DiPino v. Davis, 354 Md. 18, 729 A.2d 354 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 23

Downey v. Collins, 866 F.Supp. 887 (D. Md. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Elliott v. Kupferman, 58 Md. App 510, 526 473 A.2d 960 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 25

Elmore v. City of Kansas City, Kansas, 1989 WL 103641, *9 (D. Kan. 1991)
    (copy attached hereto as Exhibit T) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Evans v. C & P Tel. Co., 535 F. Supp. 499 (D. Md. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Fersner v. Prince George's County, 138 F. Supp.2d 685 (D. Md. 2001) . . . . . . . . . . . . . . . . . . . . 11

Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1133 (4th Cir. 1982) . . . . 26

Gooden v. Howard County, 954 F.2d 960 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

Goodwin v. Metts, 885 F.2d 157 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Gould v. Davis, 165 F.3d 265 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Harlow v. Fitzgerald, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

Haring v. Prosise, 462 U.S. 306 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W. 2d 370 (Tex. 1948) . . . . . . . . . . . . . . . 14

Herilla v. Mayor & City Council of Baltimore, 37 Md.App. 481, 378 A.2d 162 (1977) . . . . . . . 16

Higgins v. City of Rockville, 86 Md.App. 670, 587 A.2d 1168, cert. denied,

323 Md. 309, 593 A.2d 669 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Howard v. Dickerson, 34 F.3d 978 (10th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

James v. Prince George's County, 288 Md. 315, 418 A.2d 1173 (1980) . . . . . . . . . . . . . . . . . . . . 17

Jett v. Dallas Independent School District, 491 U.S. 701 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 37

Katz v. Washington Sub. San. Comm'n, 284 Md. 503, 397 A.2d 1027 (1979) . . . . . . . . . . . . 17, 18

Khawaja  v. Mayor of Rockville, 89 Md.App. 314, 598 A.2d 489 (1991),
        appeal dismissed, 326 Md. 501, 606 A.2d 224 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Kirsch v. Prince George's County, 331 Md. 89, 626 A.2d 372, cert. denied,
        510 U.S. 1011 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Kline v. Fuller, 56 Md. App. 294, 467 A.2d 786 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Leese v. Baltimore County, 64 Md.App. 442, 497 A.2d 159, cert. denied,
        305 Md. 106, 501 A.2d 845 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Linder v. Litton Sys., 81 F.R.D. 14 (D.  Md.  1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Loewinger v. Prince George's County, 266 Md. 316, 292 A.2d 67 (1972) . . . . . . . . . . . . . . . . . . 14

Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), cert. denied, 506 U.S. 1080 (1993) . . . . . . . . 33

Madore v. Baltimore County, 34 Md.App. 340, 367 A.2d 54 (1976) . . . . . . . . . . . . . . . . . . . . . . . 13

Malady v. Crunk, 902 F.2d 10 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Maranto v. Petetit, 113 Md.  App.  401, 694 A.2d 950 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Martino v. Bell, 40 F.Supp.2d 719 (D.Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Maryland - Nat'l Capital Park & Planning Comm'n v. Kranz, 308 Md.  618,
        521 A.2d 729 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Michigan v . Tucker, 417 U.S. 433 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Middlebrooks v. University of Maryland at College Park</u>, 980 F. Supp.  824 (D.  Md. 1997)  . . 41

<u>Migra v. Warren City School Dist.  Board of Education</u>, 465 U.S. 75 (1984) . . . . . . . . . . . . . . . . 27

<u>Morgan v. the District of Columbia</u>, 550 F. Supp.  465 (D.D.C. 1982) <u>aff'd</u>
    725 F.2d 125 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

<u>Mullen v. Princess Anne Volunteer Fire Co., Inc.</u> 853 F.2d 1130(4th Cir. 1988) . . . . . . . . . . . . 38

<u>Nam v. Montgomery County</u>, 127 Md.App. 172, 732 A.2d 356 (1999) . . . . . . . . . . . . . . . . . 17, 18

<u>Nasim v. Warden, Maryland House of Correction</u>, 64 F.3d 951 (4th Cir.  1995)
    (en banc), <u>cert. denied</u>, 516 U.S. 1177 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

 <u>Neuenschwander v. Washington Suburban Sanitary Comm'n</u>, 187 Md. 67,
    48 A.2d 593 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>O'Reilly v. County Board of Appeals for Montgomery County, Maryland</u>,
    900 F.2d 789 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

<u>Patterson v. Leyden</u>, 947 F. Supp.  1211 (N.D. Ill.  1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

<u>Pennhollow v. Cecil County</u>, 116 Md. App. 265, 695 A.2d 1268 (1997) . . . . . . . . . . . . . . . . . . . 15

<u>Petetit v. Town of Port Deposit</u>, 113 Md.App. 401, 688 A.2d 54, <u>cert. denied</u>,
    <u>Maranto v. Petetit</u>, 346 Md. 27, 694 A.2d 950 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Prince George's County v. Aluisi</u>, 354 Md. 422, 731 A.2d 888 (1999) . . . . . . . . . . . . . . . . . . . . . 15

<u>Pritchett v. Alford</u>, 973 F. 2d 307 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

<u>Quecedo v. DeVries</u>, 22 Md. App. 58, 321 A.2d 785 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

<u>Roberts v. Total Health Care, Inc.</u>, 109 Md. App. 635, 675 A.2d 995 (1996) . . . . . . . . . . . . . . . . 23
<u>Robertson v. Maryland State Department of Personnel</u>, 481 F. Supp.  108
    (D. Md. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

<u>Robinson v. Balog</u>, 160 F.3d 183 (4th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Robinson v. Montgomery Ward and Co., Inc., 823 F.2d 793 (1987) . . . . . . . . . . . . . . . . . . . . . . . . 40

Rose v. Bartle, 871 F.2d 331 (3d. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Rucker v. Harford County, 316 Md. 275 558 A.2d 399 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Saucier v. Katz, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

Sevigny v. Dicksey, 846 F.2d 953 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Shoemaker v. Smith, 353 Md. 143, 725 A.2d 549 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Slattery v. Rizzo, 939 F.2d 213 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Solis v. Prince George's County, 153 F.Supp.2d 793 (D. Md. 2001) . . . . . . . . . . . . . . . . . . . . . . 32

Soper v. Montgomery County, 294 Md. 331, 449 A.2d 1158 (1982) . . . . . . . . . . . . . . . . . . . . . . 15

Southern Management v. Taha, 137 Md. App. 697, 769 A.2d 962 (2001)
        rev'd on other grounds sub. nom, Taha v. Southern Management,
        367 Md. 564, 790 A.2d 11 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 27

Stewart v. Prince George's County 75 Fed Appx. 198, 2003 WL 22179057 (4th Cir. 2003)
        (attached hereto as Exhibit P) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Talley v. Farrell, 156 F. Supp. 2d 534 (D. Md. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Tarantino v. Baker, 825 F.2d 772 (4th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . 38

Torchinsky v. Siwinski, 942 F.2d 257 (4th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

U.S. v. Hoffman, 929 F.2d 692, 1991 WL 41503 (4th Cir. 1991)(unpublished)
        (attached hereto as Exhibit R) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Walker v. Schaeffer, 854 F.2d 138 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Wallace v. King, 626 F.2d 1157 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

vii

<u>Weinberger v. Bristol-Myers Co.</u>, 652 F. Supp. 187 (D. Md. 1986) . . . . . . . . . . . . . . . . . . . . . . 11, 12

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

<u>Wilson v. Layne</u>, 526 U.S. 603 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

<u>Wilson v. Layne</u>, 141 F.3d 111 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

<u>Wilkerson v. Baltimore County</u>, 218 Md. 271, 146 A.2d 28 (1958) . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Williams v. Montgomery County</u>, 123 Md.App. 119, 716 A.2d 1100 (1998)
    <u>aff'd</u> <u>sub</u> <u>nom.</u>, <u>Maynard v. Williams</u>, 352 Md. 310, 721 A.2d 989 (1998) . . . . . . . . . 13, 14

<u>Williams v. Prince George's County</u>, 112 Md. App. 526, 685 A.2d 884 (1996) . . . . . . . . . . . . . . 17

<u>Young v. City of Mount Rainier</u>, 238 F.2d 567 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>Zablonsky v. Perkins</u>, 230 Md. 365, 187 A.2d 314 (1963) . . . . . . . . . . . . . . . . . . . . . . . . 20, 24, 28

<u>STATUTES</u>

ARTICLE 24 OF THE MARYLAND DECLARATION OF RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

MD. CODE ANN., CTS. & JUD. PROC. §5-304. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

MD. CODE ANN., STATE GOV'T. § 12-104(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

MD. CODE ANN., CTS. & JUD. PROC. § 5-522 (b)(1) (1998 Repl. Vol.) . . . . . . . . . . . . . . . . . . . . . . 24

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## STATEMENT OF THE CASE

On or about February 7, 2002, Anthony Gray ("Plaintiff") filed suit against the State of Maryland, Calvert County ("the County"), Deputy Lawrence Stinnett ("Sheriff Stinnett" or "the Sheriff"),[1] Brian Newcomer ("Trooper Newcomer"), and Richard Sheldon ("Trooper Sheldon"). The Complaint included various federal and state law claims arising from the investigation into the rape and murder of Linda May Pellicano ("Ms. Pellicano") and Plaintiff's subsequent conviction, following a guilty plea, on charges related to his involvement in the crime.

At the outset of the litigation, the County and Sheriff Stinnett filed separate motions to dismiss. The Court subsequently dismissed most of the claims against both the County and Sheriff Stinnett. The only remaining claims against both the County and Sheriff Stinnett are: common law malicious prosecution (Count I); violations of Plaintiff's rights under Article 24 of the Maryland Declaration of Rights (Count IV); malicious prosecution under 42 U.S.C. § 1983 (Count VII); and intentional discrimination under 42 U.S.C. § 1981 (Count VIII). See Court's Order dated September 18, 2002, incorporated herein by reference and attached hereto as Exhibit A, pp. 21-22. Plaintiff's § 1983 claim against the County has been bifurcated. Therefore, the only claims remaining claim against the County for purposes of this motion are Plaintiff's common-law malicious prosecution claim, Maryland Declaration of Rights Article 24 claim and § 1981 claim.

---

[1] Lawrence Stinnett was in fact the Sheriff of Calvert County at all times relevant to the factual allegations in the Complaint.

Discovery is now complete.  There is no dispute of fact regarding any of Plaintiff's remaining claims against the County or Sheriff Stinnett.  Consequently, the County and Sheriff move for summary judgment on each of Plaintiff's remaining claims against them.

## STATEMENT OF FACTS

On May 13, 1991, Ms. Pellicano was brutally raped and murdered in her home.  Amended Complaint, ¶ 10.  In addition, blank checks for Ms. Pellicano's personal checking account were stolen from her home.  Complaint ¶ 12.  Those checks were later recovered.  See Deposition of Brian Newcomer, dated April 23, 2003, incorporated herein by reference and attached hereto as Exhibit B, pp. 40-41.

The State Police were in charge of the investigation into Ms. Pelicano's murder.  Exhibit B, p. 25.  Trooper Newcomer was the primary investigator.  See Transcript of Proceedings Motions in State v. Holland, testimony of Brian Newcomer, dated November 13, 1991, incorporated herein by reference and attached hereto as Exhibit C, pp.  85-86.  The Calvert County Sheriff's Department assisted in the investigation.  Exhibit B, p. 25.

Sheriff Stinnett's initial involvement in the investigation was limited to attending periodic meetings regarding the case.  See Deposition of Lawrence Stinnett, dated April 8, 2003, incorporated herein by reference and attached hereto as Exhibit D, pp.  22-23.  On June 20, and 21, 1991, however, he and Trooper Newcomer interviewed several individuals, including Plaintiff, about the murder.

On June 19, 1991, Mr. Leonard Long ("Mr. Long") was in the custody of the Calvert County Sheriff's Department on charges unrelated to the Pelicano murder. Supplemental Report prepared by Lawrence Stinnett, dated August 19, 1991, incorporated herein by reference and attached hereto as Exhibit E, p. 336. During questioning regarding the Pelicano murder, Mr. Long was shown the stolen checks from Ms. Pelicano's home which had subsequently been recovered. Id. After seeing the checks, Mr. Long advised the police officers questioning him that he thought that the handwriting on the check was Plaintiff's. See Transcript Motion to Suppress Testimony in State v. Long, testimony of Deputy William Soper, dated November 12, 1991, incorporated herein by reference and attached hereto as Exhibit F, pp. 12-13.

On June 20, 1991, Paul Holland (" Mr. Holland") was also in the custody of the Calvert County Sheriff's Department on charges unrelated to the Pellicano murder. Exhibit C, p. 87. While in custody, Mr. Holland was transported by Trooper Newcomer to the State Police Barracks for questioning regarding the Pellicano murder. Id., p. 86. During questioning, Mr. Holland told Trooper Newcomer and Sheriff Stinnett that on the day of the Pellicano murder:

> he was approached by Leonard Long and Anthony Gray in the area
> of Dalrymple Road and Christiana-Parran Road. They told him that
> they wanted to get some money out of the house and they wanted
> him to look out for them. He indicated that he stood across the road
> from the victim's residence in a wooded area; and he watched Mr.
> Gray and Mr. Long walk to the rear of the victim's house. And they
> disappeared out of sight for a short period of time. Then he saw the
> victim's blue vehicle pull into the driveway; and he fled the area on
> foot and did not return.

Id., pp. 94-95.

3

Prior to interviewing Mr. Holland and Mr. Long, Plaintiff was not considered a suspect in Ms. Pelicano's murder.  See Exhibit D, p. 38.  Based upon the information collected during the investigation, including the information provided by Mr. Holland and Mr. Long, Trooper Newcomer believed there was probable cause to arrest Plaintiff for his involvement in Ms. Pelicano's murder.  Exhibit B, pp. 31-32.

The Statement of Charges prepared, signed and filed by Trooper Newcomer lays out the factual circumstances that he believed established probable cause.  Id.  Those factual circumstances include, in pertinent part:

> A canvass of the surrounding neighborhood revealed that the defendant, Gray, was in the area of the crime on the date of the crime. . . . On 6/19/91, Paul Holland was arrested for an unrelated crime that occurred in Calvet County and was advised of the Miranda [sic] Warnings at approximately 1500 hours. . . . Holland was re-interviewed in a subsequent interview, and Holland advised that on 5/13/91, he was with two co-defendants, Anthony Gray and Leonard. [sic] Long.  Sometime after 1200 PM, he and the co-defendants smoked Crack Cocaine together and walked north on Dalrymple Road towards the victim's residence.  Once at the victim's residence Holland stated he observed Gray and Long go to the rear of the residence and "probably" enter the residence through a rear window. . . . On 6/19/91, Leonard Long was arrested for an unrelated crime and he was advised of the Miranda Warnings.  He agreed to submit to an interview without the presence of an attorney.  Long advised that he had went to school with Anthony Gray, the defendant, and because of that was very familiar with the hand writing of Anthony Gray.  When presented with a photocopy of the recovered checks, Long stated that the writing on the checks was idtifical [sic] to the handwriting he knew of Anthony Gray.

See Statement of Charges, dated June 21, 1991, incorporated herein by reference and attached hereto as Exhibit G.

4

Trooper Newcomer took Plaintiff into custody on June 20, 1991, at approximately 6:00 p.m. Exhibit B, p. 31 & Exhibit D, pp. 33 & 36. Sheriff Stinnett accompanied Trooper Newcomer when he went to arrest Plaintiff. Exhibit D, p. 36. Prior to assisting Trooper Newcomer take Plaintiff into custody, Sheriff Stinnett and Plaintiff did not know each other. See Exhibit D, p. 39 & Deposition of Anthony Gray, dated March 24, 2003, incorporated herein by reference and attached hereto as Exhibit H, p. 34. According to Plaintiff, the only involvement he ever had with Sheriff Stinnett was on June 20, and 21, 1991. Exhibit H, p. 85. Sheriff Stinnett was, however, on familiar terms with Plaintiff's family. During his deposition, the Sheriff testified:

> I went with Newcomer to pick him up. On the way over I told Newcomer I said, damn, I hope [Plaintiff] is not involved because his grandfather just got finished working at the poles for me at Mt. Hope School. He wore my sweatshirt and he wore my hat.
>
> I said I have known his grandmother and grandfather for 40 years -- Major Gray -- and he worked for the state road all those 40 years and every Friday night he would come into the A&P where I worked part-time and I knew his father, Kermit Gray, who when I wanted to know something going on in the Bayside area I could go see Kermit Gray. Kermit had died and past away at that time. I said, boy, I hope he is not involved.

Exhibit D, p. 36.

After Trooper Newcomer arrested Plaintiff, he advised Plaintiff of his Miranda rights. Id., p. 45. Plaintiff does not recall whether he was advised of his rights on the night in question. Exhibit H, pp. 69-73. Following his arrest, Plaintiff was transported to the State Troopers barracks ("the Barracks") for questioning. Id., p. 33.

After arriving at the Barracks, Plaintiff was placed in a holding cell for approximately one hour. Exhibit D, p. 51. During that period of time, Plaintiff did not speak with anyone. Id., pp. 51-52. After approximately one hour, Sheriff Stinnett, Trooper Newcomer and a third officer spoke with Plaintiff for approximately half an hour. Exhibit H, pp. 53-54. Plaintiff was then placed back in the holding cell while investigators waited for a polygraph operator to arrive. Exhibit D, p. 33. While they waited for the polygraph examiner, Plaintiff was removed from the holding cell for fingerprinting. Exhibit H, pp. 55-56. Sheriff Stinnett was not present when Plaintiff was fingerprinted. Id. p. 56. Sometime after Plaintiff was fingerprinted, the polygraph examiner arrived.

Plaintiff testified during his deposition that the polygraph examiner gave him two polygraph examinations, each approximately one hour in length. Id. p. 57-58. Sheriff Stinnett was not present during either polygraph examination. Id, p. 58. Plaintiff claims that after each examination, the examiner advised him that he had failed the examination. Id. pp. 57-58. According to Sheriff Stinnett, the polygraph examiner advised him that "he thought [Plaintiff] was lying and that he thought [Plaintiff] was ready to give us a statement." Exhibit D, pp. 34-35.

Following the polygraph test, Plaintiff was taken back to the holding cell. Exhibit H, pp. 58-59. Plaintiff remained in the holding cell for approximately two hours. Id. p. 59. During that time, Plaintiff had no contact with Sheriff Stinnett or any of the other officers. Id. pp. 59-60. After approximately two hours, Plaintiff was taken to another room for further questioning. Id., p. 60.

Plaintiff claims that at this point, he was questioned by Sheriff Stinnett and two other officers. Exhibit H, pp. 60-61. During this interview, Plaintiff claims the Sheriff told him "if [you] don't plead guilty to it, they was going to give [you] the electric chair." Id, p. 62. Sheriff Stinnett has testified that he was not present during the first interview of Plaintiff after the polygraph examination. Exhibit D, pp. 35-36. Sheriff Stinnett also denies talking to Plaintiff about electrocution. Id. pp. 38-39.

According to Trooper Greg Cameron, only he and Trooper Newcomer were present during the first interview of Plaintiff after the polygraph examination. See Supplement Report prepared by TFC G. P. Cameron, dated June 22, 1991, incorporated herein by reference and attached hereto as Exhibit I, p. 1. Sheriff Stinnett was not present during this interview. Exhibit D, p. 36. Trooper Cameron and Trooper Newcomer interviewed Plaintiff for approximately an hour or two. Exhibit D, p. 37. The interview was conducted primarily by Trooper Cameron because he was "familiar" with Plaintiff. Exhibit I, p. 1. After approximately 20 minutes of questioning by Trooper Cameron, Plaintiff began describing his involvement in the Pelicano murder to Troopers Cameron and Newcomer. Id., p. 2. According to Trooper Cameron's report, Plaintiff gave three different descriptions regarding the extent of his involvement. Specifically, Plaintiff told Troopers Cameron and Newcomer:

> that on the date of the crime, he was coming down Dalrymple Road enroute to "NOONIE" Jones' residence located on Christiana Parran Road (first house on the right). He met up with Long and Holland at the intersection of Dalrymple Road and Christiana Parran Road. Those two subject came from the Randle Cliff area walking. Gray told them he was going to NOONIE's to purchase some "Crack" cocaine.

7

> They then told Gray they were going to get some money. Gray could
> not recall who made that statement. When Gray first told this
> rendition, he said he knew they were going to break into a house, so
> he left walking down Christiana Parran Road. On his second version,
> Gray said he waited until he saw Holland and Long on the driveway
> located next to the victim's house before walking away. On the last
> statement, Gray said he stood by the intersection and watched as
> Holland Long [sic] walked down the adjacent driveway. They then
> went behind the victim's house. He did not see how or if they entered
> the home. He waited at the intersection for approximately 15-20
> minutes. He then noticed the victim return home in her blue car.
> When he saw her return home, he left and walked to Noonie Jones'
> residence. Gray added that when he was standing at the intersection,
> James Holland drove by in his silver Honda and blew his horn at him.
> Gray said he know the victim and her son. He went to school with
> Micahel Pellicano. Gray told me he knew that the other two men
> were going to break into the house.

Id.

After completing his questioning of Plaintiff, Trooper Cameron left the interview room.
At that time, he advised the Sheriff that Plaintiff "was going to tell us what happened." Id. p. 37.
Sheriff Stinnett then joined Plaintiff and Trooper Newcomer in the interview room. Id. p. 38.
During that interview, Plaintiff gave a recorded statement. See Audio Cassette of Plaintiff's first
recorded statement, incorporated herein by reference and attached hereto as Exhibit J & Written
Transcript of Plaintiff's First Recorded Statement, incorporated herein by reference and attached
hereto as Exhibit K.

At the outset of Mr. Gray's first recorded interview, Trooper Newcomer stated:

> Anthony, you've already been advised of your rights, and you
> indicated that you understood and that you were willing to make a
> statement?

8

Exhibit J & Exhibit K, p. 1.  Plaintiff responded unequivocally, "Yeah".  Id.  Plaintiff has testified

he does not recall whether he was advised of his rights before he gave his statement.  Exhibit H,

pp. 69-73.

Following this exchange, Plaintiff explained in detail what happened on the day of the

Pelicano murder.  The events Plaintiff described in his first taped statement were the same as the

final, full description of events he gave to Trooper Cameron only a few minutes before.  Plaintiff

explained that he had seen Mr. Holland and Mr. Long on the street and that they asked him to

serve as a lookout while they went to get some money.  Exhibit J & Exhibit K, p. 1.  Plaintiff then

waited approximately 15 to 20 minutes for Mr. Holland and Mr. Long to return when he saw Ms.

Pelicano's car pull up to her home. Exhibit J & Exhibit K, p. 2.  When the car pulled up, Plaintiff

walked away from the scene.  Id.

After giving his recorded statement, Plaintiff was transported to the Calvert County

Detention Center.  Exhibit H, p. 73.  Plaintiff had no contact with Sheriff Stinnett while he was in

the Calvert County Detention Center.  Id. p. 74.

On August 6, 1991, Plaintiff gave a second recorded statement to police officers

investigating the Pelicano murder.  Id., pp. 76-77.  Sheriff Stinnett was not present when this

statement was given.  Exhibit D, pp. 48-49.  During his second statement to the police, Plaintiff

told Trooper Sheldon that he met Mr. Holland and Mr. Long across the street from Ms. Pellicano's

home on the day of her murder.  See Statement of Plaintiff, dated August 6, 1991, incorporated

herein by reference and attached hereto as Exhibit L, p. 2.  The three agreed to go "get some

9

money." <u>Id</u>., p. 3.  Plaintiff then entered Ms. Pellicano's home, along with Mr. Holland and Mr.

Long, through a screen window.  <u>Id</u>.  After entering the home, Plaintiff searched the home for

money.  <u>Id</u>. p. 4.  While Plaintiff was in Ms. Pellicano's home, she returned.  <u>Id</u>. pp. 5-6.  Ms.

Pellicano found Plaintiff, Mr. Holland and Mr. Long in her home.  <u>Id</u>. p. 6.  During the ensuing

altercation, Mr. Long got a knife from the kitchen.  <u>Id</u>.  Mr. Holland then used the knife to stab Ms.

Pellicano.  <u>Id</u>.  After stabbing Ms. Pellicano, Mr. Holland raped her.  <u>Id</u>. p. 8.  Plaintiff watched

Mr. Holland rape Ms. Pellicano's dead body for approximately five to ten minutes.  <u>Id</u>. pp. 9-11.

According to Plaintiff's statement, after Mr. Holland finished raping Ms. Pellicano, Mr. Holland

tied her up.  <u>Id</u>. p. 11.  Mr. Holland then took some items from Ms. Pellicano's purse and the three

men left her home.  <u>Id</u>. p. 12.

After Plaintiff gave that statement, he had no contact with Sheriff Stinnett before he entered

a plea to charges related to his role in the Pelicano murder.   Exhibit D, p. 78.

Plaintiff voluntarily pled guilty to first degree murder and rape on October 7, 1991.

<u>See</u> Plea Agreement, filed October 7, 1991, incorporated herein by reference and attached hereto

as Exhibit M, ¶¶ 2 & 3 & Transcript of Proceedings Plea Agreement, dated October 7, 1991,

incorporated herein by reference and attached hereto as Exhibit N, pp. 2-7.  At the time he entered

into his plea agreement, he was represented by counsel.  Exhibit H, pp. 80-81.  The statement read

into the record regarding Ms. Pellicano's murder was consistent with the statement Plaintiff gave

on August 6, 1991.  Exhibit N, pp. 8-10.  As part of the plea agreement, Plaintiff agreed to testify

against Mr. Holland and Mr. Long.  Exhibit M, ¶ 6.  Plaintiff was later sentenced to  life in prison

with the possibility of parole after thirty years.   Amended Complaint, ¶ 37.

During Plaintiff's incarceration, additional evidence came to light regarding Ms. Pelicano's

murder.  Amended Complaint, ¶ 41.  That evidence led to the conviction of Anthony Fleming for

the murder of Ms. Pelicano.  On February 8, 1999, Plaintiff was granted a new trial and was

released from prison. Amended Complaint, ¶ 43.

## ARGUMENT

### I     STANDARD OF REVIEW.

Rule 56 of the Federal Ruled of Civil Procedure provides that summary judgment shall be

entered in favor of a moving party when there is no genuine dispute as to any material fact and

the moving party is entitled to judgment as a matter of law.  See, Celotex Corp. v. Catrett, 477 U.S.

317 (1986); Weinberger v. Bristol-Myers Co., 652 F. Supp. 187, 189 (D. Md. 1986).   Although the

moving party has the burden to show there is no dispute as to material facts, he need not negate

his opponent's case; he need only disclose the absence of evidence to support that case.

Weinberger, 652 F. Supp. at 189 (citations omitted).

"Mere speculation cannot stave off a properly supported motion for summary judgment."

Fersner v. Prince George's County, 138 F. Supp.2d 685, 686 (D. Md. 2001).  A party may not rest

on the allegations in his pleadings, but must establish that specific, material facts exist which give

rise to a genuine issue of law.  Celotex, 477 U.S. at 324.  A court considering a motion for summary

judgment must view the material facts, and the inferences therefrom, in the light most favorable

to the non-moving party. Id. However, all such inferences must be logical and firmly based on established facts. The substantive law identifies which facts, or inferences therefrom, are material and also identifies the standard of proof against which the presence or absence of a material factual dispute is to be gauged. Id. These standards are then applied to the record generated by the parties. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law and is akin to a directed verdict inquiry. Celotex, at 323; Weinberger, 652 F. Supp at 189. Because there is no dispute as to the "material facts" which are necessary to support the elements of Plaintiff's claims against the County or Sheriff Stinnett. They are both entitled to summary judgment as a matter of law on each of Plaintiff's remaining claims against them.

## II.    PLAINTIFF'S STATE LAW CLAIMS AGAINST THE COUNTY SHOULD BE DISMISSED FOR FAILURE TO PROVIDE NOTICE UNDER THE LOCAL GOVERNMENT TORT CLAIMS ACT.

The Local Government Tort Claims Act ("LGTCA") provides that an action for unliquidated damages may not be brought against a local government or its employees unless a notice of the claim is given within 180 days after the injury:

> (a) *Notice required*.-- Except as provided in subsection (c) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury. . . .

> (c) *Waiver of notice requirement*.-- Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

MD. CODE ANN., CTS. & JUD. PROC. §5-304.

In order to maintain an action in damages, "the declaration must allege that the notice prescribed by the statute was duly presented, for the notice is a condition precedent to the right to maintain the suit." Neuenschwander v. Washington Suburban Sanitary Comm'n, 187 Md. 67, 76-77, 48 A.2d 593, 598 (1946); see also, Madore v. Baltimore County, 34 Md.App. 340, 342, 367 A.2d 54, 56 (1976)(the notice is a condition precedent to the right to maintain the suit); Williams v. Montgomery County, 123 Md.App. 119, 716 A.2d 1100, 1105 (1998), aff'd sub nom., Maynard v. Williams, 352 Md. 310, 721 A.2d 989 (1998) ("no suit can be commenced against a local government or its agent unless the plaintiff complied with the 180-day notice requirement").

Ignorance of the statute does not constitute the "good cause" necessary to waive the 180-day notice requirement. Bibum v. Prince George's County, 85 F.Supp.2d 557, 565 (D.Md. 2000); Williams v. Montgomery County, supra, 716 A.2d at 1107. Nor does the fact that a plaintiff remains unrepresented or injured during the notice period justify failure to comply with the notice requirement. Madore supra (where plaintiff was unrepresented by counsel and physically disabled during much of the statutory notice period); see also, Downey v. Collins, 866 F.Supp. 887, 889-90 (D.Md.1994)(fact that arrestee did not discover his injury until nearly three months after arrest was not "good cause" for arrestee's delay in giving notice to county); Martino v. Bell, 40 F.Supp.2d 719, 722 (D.Md. 1999)(plaintiff must demonstrate good cause for failing to comply with notice requirement before prejudice to defendant even becomes an issue).

13

In <u>Williams v. Montgomery County</u>, the Court quoted approvingly from the Texas case of

<u>Hawkins v. Safety Casualty Co.</u>, 146 Tex. 381, 207 S.W.2d 370 (Tex. 1948), as follows:

> The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.

<u>Williams v. Montgomery County</u>, 716 A.2d at 1107 (quoting <u>Hawkins</u>, 146 Tex. at 345).

Thus, the Court explained that where a plaintiff fails to act with "ordinary prudence" because the plaintiff did not prosecute his claim with that degree of diligence that an "ordinary prudent person" would have exercised under the same or similar circumstances, his claim is barred for failure to give timely notice.  <u>Williams v. Montgomery County</u>, 716 A.2d at 1107. The court quoted <u>Loewinger v. Prince George's County</u>, 266 Md. 316, 317-318, 292 A.2d 67 (1972), noting that:

> While claimants may consider this type of legislation to be only a hurdle in an obstacle course erected to frustrate claims against municipal corporations, its purposes are apparent and the validity of such legislation has been upheld.

<u>Williams v Montgomery County</u>, <u>supra</u>, 716 A.2d at 1106.

The Complaint alleges that Gray was released and granted a new trial on February 8, 1999. (Complaint, ¶43). Plaintiff was required to provide notice in compliance with the LGTCA on or before August 8, 1999.  Plaintiff, however, did not notify the County of his intent to file a claim until October 26, 1999.  Timely notice is a condition precedent to suit and Plaintiff's state law

claims against the County should be dismissed for failure to provide notice consistent with the requirements of the LGTCA. The County therefore respectfully submits that the Court grant it summary judgment on Counts I and IV.

### III.     SHERIFF STINNETT IS NOT A COUNTY EMPLOYEE FOR PURPOSES OF STATE LAW CLAIMS AND, THUS, THE COUNTY MAY NOT BE HELD VICARIOUSLY LIABLE UNDER COUNTS I AND IV.

For purposes of Plaintiff's state law claims, Sheriff Stinnett is a state, not a county, employee and, thus, the County may not be held vicariously liable for Sheriff Stinnett's alleged actions. See e.g., Rucker v. Harford County, 316 Md. 275, 289, 558 A.2d 399, 402-406 (1989) (deputy sheriffs are state rather than local employees); Soper v. Montgomery County, 294 Md. 331, 449 A.2d 1158 (1982); Prince George's County v. Aluisi, 354 Md. 422, 731 A.2d 888, 895 (1999); Pennhollow v. Cecil County, 116 Md. App. 265, 695 A.2d 1268 (1997) ("under [Maryland law], sheriffs and deputy sheriffs are not county employees but are state officials or employees."); Boyer v. State, 393 Md. 558, 572, 594 A.2d 121, 128 (1991) (county cannot be held vicariously liable for torts of sheriffs deputies since deputy sheriffs are state employees); Kline v. Fuller, 56 Md. App. 294, 467 A.2d 786 (1983)(sheriff of Maryland county is state, not county officer). See also, MD. CODE ANN., STATE GOV'T. § 12-104(a)(6) (wherein sheriffs and deputy sheriffs are defined as "state personnel."). On this basis as well, the County is entitled to summary judgment as to Counts I and IV.

**IV     THE COUNTY IS ENTITLED TO GOVERNMENTAL IMMUNITY ON PLAINTIFF'S COMMON-LAW MALICIOUS PROSECUTION CLAIM.**

Assuming *argunedo*, that the Court finds that Sheriff Stinnett was an employee of the County at the time of the incident in question, (and he plainly was not) the County is entitled to governmental immunity on Plaintiff's common-law malicious prosecution claim. Counties are immune from tort liability for governmental actions.[2] Dipino v. Davis, 354 Md. 18, 47, 729 A.2d 354, 369-70 (1999); Higgins v. City of Rockville, 86 Md.App. 670, 676, 587 A.2d 1168, cert. denied, 323 Md. 309, 593 A.2d 669 (1991); Leese v. Baltimore County, 64 Md.App. 442, 477, 497 A.2d 159, 177, cert. denied, 305 Md. 106, 501 A.2d 845 (1985); Austin v. City of Baltimore, 286 Md. 51, 53, 405 A.2d 255 (1979); Herilla v. Mayor & City Council of Baltimore, 37 Md.App. 481, 484-85, 378 A.2d 162 (1977). Governmental immunity attaches to all government acts even if a plaintiff alleges that the actions were performed with actual malice. Wilkerson v. Baltimore County, 218 Md. 271, 273, 146 A.2d 28 (1958). Moreover, it is clear that a municipal corporation may not be held liable under the theory of *respondeat superior* when the alleged act at issue is governmental in nature. Dipino, supra, 354 Md. at 47, 729 A.2d at 369-70.

It is clearly established under Maryland law that the operation of a police department is a quintessential governmental function. See Dipino, at 47, 729 A.2d at 369-70. As the Court of Appeals in Dipino stated:

---

[2] The County concedes that under the current status of the law, there is vicarious liability for Maryland Declaration of Rights claims. See Petetit v. Town of Port Deposit, 113 Md.App. 401, 688 A.2d 54, cert. denied, Maranto v. Petetit, 346 Md. 27, 694 A.2d 950 (1997).

> Certain well-established rules apply to tort actions filed against local governments and their employees and officials. A local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity. When acting in a private or proprietary context, the entity also has *respondeat superior* liability for the tortious conduct of its employees. Because that liability is derivative, however, recovery may not be had against the entity if the employee is found not to be liable or is released. See Katz v. Washington Sub. San. Comm'n, 284 Md. 503, 397 A.2d 1027 (1979); Austin v. City of Baltimore, 286 Md. 51, 405 A.2d 255 (1979); James v. Prince George's County, 288 Md. 315, 418 A.2d 1173 (1980). [FN6] In this case, it is clear that DiPino's conduct was not committed in any private or proprietary capacity. In her capacity as a city police officer, she was purporting to enforce the State criminal law. That is quintessentially governmental in nature. There is, therefore, no *common law* liability on the part of the City.

DiPino, at 47-48, 729 A.2d at 369-70; see also, Williams v. Prince George's County, 112 Md. App. 526, 685 A.2d 884 (1996).

It is also clear that the LGTCA does not waive common law local governmental immunity. See Williams v. Prince George's County, supra (dismissing suit against County alleging intentional infliction of emotional distress, negligent infliction of emotional distress, false arrest, false imprisonment, battery, assault and negligence on the basis of governmental immunity); Nam v. Montgomery County, 127 Md.App. 172, 183-84, 732 A.2d 356, 363 (1999); Khawaja v. Mayor of Rockville, 89 Md.App. 314, 325-26, 598 A.2d 489 (1991), appeal dismissed, 326 Md. 501, 606 A.2d 224 (1992)(the LGTCA does not authorize the maintenance of a suit directly against the local government); Maryland - Nat'l Capital Park & Planning Comm'n v. Kranz, 308 Md. 618, 521 A.2d

729 (1987) (local governments are shielded from tort liability for governmental actions unless the General Assembly has specifically waived the immunity of the municipality); <u>Nam</u>, <u>supra</u>, 127 Md.App. at 184, 732 A.2d at 362-63 ("[n]owhere in the Act [LGTCA], however, is there a waiver of immunity so that the governmental entity is subject to being made a party to an action based upon its employee's or agent's tortious acts."). Simply put, the County simply is not amenable to suit in this case under Count I. <u>Katz</u>, <u>supra</u>. Accordingly, the County is entitled to summary judgment on Count of the Amended Complaint.

**V    SHERIFF STINNETT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM (COUNT I).**

Under Maryland law, in order to establish a common-law claim for malicious prosecution, a plaintiff must establish that:

1.    a criminal proceeding was instituted against the plaintiff by the defendant;

2.    the criminal proceeding was resolved in the plaintiff's favor;

3.    the defendant did not have probable cause to institute the proceeding; and

4.    the defendant acted with malice, or a primary purpose other than bringing the offender to justice.

<u>Candelero v. Cole</u>, 152 Md. App. 190, 831 A.2d 495, 500 (2003); <u>Southern Management v. Taha</u>, 137 Md. App. 697, 769 A.2d 962, 975 (2001) <u>rev'd</u> <u>on</u> <u>other grounds</u> <u>sub. nom</u>, <u>Taha v. Southern Management</u>, 367 Md. 564, 790 A.2d 11 (2002) (<u>citing</u> <u>Caldor, Inc. v. Bowden</u>, 330 Md. 632, 625 A.2d 959 (1993)); <u>Brewer v. Mele</u>, 267 Md. 437, 298 A. 2d 156, 159 (1972). Based upon the record

before this Court, Plaintiff cannot establish the first, third or fourth elements of his common-law malicious prosecution claim against the Sheriff.

### A.     Plaintiff Cannot Establish the First Element of his Malicious Prosecution Claim.

Plaintiff has adduced no evidence that Sheriff Stinnett instituted any criminal proceedings against him.  It is undisputed that Trooper Newcomer was the lead investigator in this case.  Similarly, there is no dispute that Trooper Newcomer was the officer responsible for arresting Plaintiff.  The Statement of Charges, filed under oath by Trooper Newcomer, identifies him as the arresting officer.  See Exhibit H.  The only signature at the bottom of the Statement of Charges belongs to Trooper Newcomer.   Sheriff Stinnett's name does not appear anywhere on the Statement of Charges.  Nothing in the Statement of Charges or any other portion of the record indicates that Sheriff Stinnett played any role in the decision to take Plaintiff into custody.

Moreover, Plaintiff's guilty plea was based upon the second statement which he gave to the police. Sheriff Stinnett was not involved in obtaining this second statement. Sheriff Stinnett's only involvement was assisting in the interview that resulted in Plaintiff admitting he was a lookout for Mr. Holland and Mr. Long when they entered Ms. Pellicano's home.  In his second statement, the one that served as the primary basis for his guilty plea, Plaintiff admitted to actually breaking into Ms. Pellicano's home with Mr. Holland and Mr. Long.  Plaintiff further admitted that he was actively involved in trying to steal money from the Pellicano home.  Finally, during the second interview, which Sheriff Stinnett was not involved in, Plaintiff admitted he watched Mr. Holland murder, and then rape, Ms. Pellicano inside of her own home.  Based upon these circumstances,

19

it cannot be said that Sheriff Stinnett was responsible for instituting criminal proceedings against Plaintiff.

### B.    Plaintiff Cannot Establish the Third Element of his Malicious Prosecution Claim.

Plaintiff voluntarily pled guilty to first degree murder and first degree rape in the Pelicano case. Based upon Plaintiff's plea, it has already been determined, as a matter of Maryland law, that there was probable cause to arrest Plaintiff.

The fact that Plaintiff was convicted of murder and rape in the Circuit Court for Calvert County establishes as a matter of law the existence of probable cause, regardless of whether the judgment was later reversed in a subsequent proceeding. See Zablonsky v. Perkins, 230 Md. 365, 187 A.2d 314 (1963) (judgment convicting plaintiff of a crime, although reversed on appeal, is proof, in malicious prosecution action, of existence of probable cause.); Quecedo v. DeVries, 22 Md. App. 58, 321 A.2d 785 (1984)(evidence that plaintiff had been tried and found guilty on charge of disorderly conduct precluded civil suit based on malicious prosecution for disorderly conduct even though on trial de novo after appeal the plaintiff was found not guilty.) In other words, it has already been conclusively established by Plaintiff's conviction in the Circuit Court for Calvert County that probable cause existed to arrest and prosecute Plaintiff. Consequently, Plaintiff cannot re-litigate the issue of whether there was probable cause to arrest him in this civil action. Zablonsky, 230 Md. 365, 187 A.2d 314 at 316.

Moreover, Plaintiff's own expert, Dr. Kirkham, does not dispute that probable cause existed to take Plaintiff into custody on June 20, 2001. Describing his opinion regarding the circumstances around Plaintiff's arrest, Dr. Kirkham stated:

> I have no criticism of the initial involvement of law enforcement authorities in this case. For example, the picking up of Mr. Gray at his residence after he had apparently been identieid, albeit differently, by Holland and Long as having been involved, and the knowledge that the law enforcement personnel would have had that he had a history, albeit a minor history, of breaking and entering and had been in the area, in the area, I think it was reasonable for them, given the severity of the crime, for them to pick him up and bring him in for questioning.

See Deposition of Dr. George Kirkham, dated August 7, 2003, incorporated herein by reference and attached hereto as Exhibit O, p. 34.

Finally, as discussed above, there is no evidence that Sheriff Stinnett was involved in the decision to arrest Plaintiff. Therefore, the Sheriff was not required to make his own independent decision as to whether probable cause existed when he helped Trooper Newcomer bring Plaintiff into custody for questioning. See Carter v. Jess, 179 F. Supp. 2d 534, 544-45 (D. Md. 2001)(holding that where there is no evidence that an individual police officer was involved in the decision to arrest a suspect, he does not need to make an independent assessment as to probable cause before assisting in an arrest.)

Based upon the information he had, Trooper Newcomer, the lead investigator into the Pelicano murder, obviously believed that he had probable cause to take Plaintiff into custody. Absent any evidence that Sheriff Stinnett was in any way involved in the decision to arrest

Plaintiff, the Sheriff did not need to make an independent assessment of probable cause.  Under the law, Sheriff Stinnett could rely on Trooper Newcomer's assessment as to whether probable cause existed and cannot be held liable if it is later found that probable cause did not exist.

### C.     Plaintiff Cannot Establish the Fourth Element of his Malicious Prosecution Claim.

Plaintiff has baldly alleged that defendants rushed to judgment to "find a culprit -- any culprit -- at any cost - in order to solve this notorious crime . . .."  Amended Complaint ¶ 48.  However, he has adduced no evidence that Sheriff Stinnett's actions were motivated by anything other that the desire to help the State Police bring the individuals responsible for Ms. Pellicano's murder to justice.

Furthermore, Plaintiff has admitted that he never had any contact with Sheriff Stinnett prior to June 20, 1991.  Therefore, there is no history of animosity between Plaintiff and the Sheriff.  Similarly, there is nothing in the record that even remotely suggests that Plaintiff and Sheriff Stinnett had any altercation of any type during their limited interactions.  Consequently, Plaintiff cannot establish the elements of his common law malicious prosecution claim and Sheriff Stinnett is entitled to summary judgment on that claim.

### VI     SHERIFF STINNETT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MARYLAND DECLARATION OF RIGHTS CLAIM (COUNT IV).

Plaintiff claims that Sheriff  Stinnett violated his state constitutional rights under Article 24 of the Maryland Declaration of Rights.  Article 24 of the Maryland Declaration of Rights is construed in *pari materia* with the due process clause of the United States Constitution, and cases

construing the federal due process clause are controlling authority with respect to Article 24. Branch v. McGeeney, 123 Md. App. 330, 718 A.2d 631, 642 (1998)(the federal Due Process Clause "is generally interpreted as being synonymous with Article 24 of the Maryland Declaration of Rights."); Dipino, supra, 729 A.2d at 367 (citing Kirsch v. Prince George's County, 331 Md. 89, 626 A.2d 372, cert. denied, 510 U.S. 1011 (1993)(construing due process and equal protection rights embodied in Article 24 of the Maryland Declaration of Rights in *pari materia* with comparable rights in Fifth and Fourteenth Amendments)); Roberts v. Total Health Care, Inc., 109 Md. App. 635, 675 A.2d 995 (1996)(the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights are complementary provisions that protect the same rights; thus, the Supreme Court's interpretations of the Fourteenth Amendment function as authority for the interpretation of that Article).

Plaintiff alleges that he was falsely arrested, falsely imprisoned and maliciously prosecuted in violation of his rights under Article 24 of the Maryland Declaration of Rights. This Court has already determined as a matter of law that the statute of limitations has expired on Plaintiff's false arrest and false imprisonment claims under 42 U.S.C. § 1983. See Exhibit A, p. 8. Consequently, Plaintiff's false arrest and false imprisonment claims under Article 24 must also fail as a result of Plaintiff's failure to file his false arrest and false imprisonment claims within the statutorily prescribed period.

In regards to Plaintiff's malicious prosecution claim under Article 24, Sheriff Stinnett is entitled to summary judgment on that claim for the reasons expounded upon in Section VIII, infra.

Simply stated, Plaintiff cannot establish that Sheriff Stinnett arrested him or was responsible for prosecuting him. To the contrary, it is clear that Plaintiff was arrested by Trooper Newcomer. Sheriff Stinnett merely drove with Trooper Newcomer when he went to arrest Plaintiff. Second, it has already been established as a matter of law that there was probable cause to arrest Plaintiff. Plaintiff cannot now re-litigate that issue. See Zablonsky, supra. Finally, as discussed in greater detail in Section VII, infra, Plaintiff cannot establish that Sheriff Stinnett acted with actual malice in dealing with him. Therefore, Sheriff Stinnett is entitled to summary judgment on each of Plaintiff's Article 24 claims against him.

## VII    SHERIFF STINNETT IS ENTITLED TO STATUTORY IMMUNITY ON PLAINTIFF'S STATE LAW CLAIMS.

Even if the Court finds that Plaintiff can sustain his common-law claim for malicious prosecution and Maryland Declaration of Rights claim, (and clearly he cannot), Sheriff Stinnett is statutorily immune from liability on that claim. Whether a defendant possesses a statutory immunity is ultimately an issue of law for the court to decide. Maranto v. Petetit, 113 Md. App. 401, 694 A.2d 950 (1997).

Maryland law provides that state personnel are immune from civil liability in tort for a tortious act or omission that occurs within the scope of his public duties if he acts without malice or gross negligence. MD. CODE ANN., CTS. & JUD. PROC. § 5-522 (b)(1) (1998 Repl. Vol.). Plaintiff has not alleged, nor can it reasonably be inferred, that Sheriff Stinnett was acting outside the scope of his employment at the time of the incident. Moreover, there are no allegations that Sheriff

Stinnett acted with gross negligence. Therefore, the burden is on the Plaintiff to provide proof of malice to deprive the Sheriff of the statutory immunity afforded to him by the General Assembly.

In Elliott v. Kupferman, 58 Md. App 510, 526 473 A.2d 960, 969 (1984), the court held that malice "consists of the intentional doing of a wrongful act without legal justification or excuse" and furthermore, that "an act is malicious if it is done knowingly and deliberately, for an improper motive and without legal justification." Furthermore, "[m]erely asserting that an act was done maliciously, or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive does not suffice." Under Maryland law, a defendant cannot be denied the protections afforded to him by statutory immunity unless the plaintiff can establish that the defendant's actions were motivated by "ill will, an improper motive, or an affirmative intent to injure." See Young v. City of Mount Ranier, 238 F.2d 567, 578 (4th Cir. 2001) (citing Shoemaker v. Smith, 353 Md. 143, 725 A.2d 549, 560 (1999)).

In the instant case, Plaintiff has adduced no evidence that Sheriff Stinnett acted with actual malice. It is undisputed that Plaintiff and Sheriff Stinnett did not know each other prior to June 20, 1991. Therefore, there is no history of animosity between the two. Moreover, the Sheriff's involvement in the Pelicano murder was minimal. Although Plaintiff was questioned over several hours by Trooper Newcomer, the Sheriff was present for only approximately one hour's worth of questioning before Plaintiff gave his first taped statement to the police.

There is nothing in the record that even suggests that, during his brief encounters with Plaintiff, any of Sheriff Stinnett's actions were motivated by ill will, improper motive or an

affirmative intent to injure.  As discussed in Point II, <u>supra</u>, the record is devoid of any evidence that Sheriff Stinnett's actions were motivated by anything other than making sure that the individuals responsible for Ms. Pelicano's murder were brought to justice.  Consequently, Plaintiff cannot establish that Sheriff Stinnett's actions were malicious, and Sheriff Stinnett cannot be denied the statutory immunity afforded to him under Maryland law.

> **VIII   SHERIFF STINNETT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S 42 U.S.C. § 1983 MALICIOUS PROSECUTION CLAIM (COUNT VII).**

Plaintiff's only remaining claim under § 1983 is his malicious prosecution claim.  <u>See</u> Exhibit A, p. 22.  A §1983 claim for malicious prosecution applies only to the seizure of an individual before he appears before a neutral magistrate.  <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 184 (4th Cir.  1996).  In a civil rights action involving an unlawful seizure claim between arrest and judicial hearing, the conduct of each individual defendant must be assessed standing alone and without regard to the conduct of other defendants who were jointly or successively maintain the detention.   <u>Fisher v. Washington Metropolitan Area Transit Authority</u>, 690 F.2d 1133 (4th Cir. 1982).

The right to be free from malicious prosecution is consumed in the protection against unreasonable seizure embodied in the Fourth Amendment.  <u>Albright v. Oliver</u>, 510 U.S. 226 (1994). In order to establish a Fourth Amendment claim under § 1983, a plaintiff must establish that he was maliciously prosecuted under Maryland law and that the prosecution deprived him of his constitutional rights.  <u>See</u> <u>Asuncion v. City of Gaithersburg</u>, 73 F.3d 356, 1996 WL 1842, *2 (4th Cir.

26

1996) (unpublished)(attached hereto as Exhibit Q) (citing Goodwin v. Metts, 885 F.2d 157, 160 n. 1 (4th Cir. 1989)(applying South Carolina to §1983 malicious prosecution claim)). As discussed above, the elements of malicious prosecution are:

1. criminal proceeding was instituted against the plaintiff by the defendant;

2. the criminal proceeding was resolved in the accused's favor;

3. the defendant did not have probable cause to institute the proceeding; and

4. the defendant acted with malice, or a primary purpose other than bringing the offender to justice.

Southern Management, supra, 137 Md. App. 697, 769 A.2d at 975 (citing Caldor, Inc., supra); Brewer, supra, 298 A. 2d at 159.

As discussed in Point II, supra, Plaintiff cannot establish the first element of his malicious prosecution claim. It is clear from the record that Trooper Newcomer, not Sheriff Stinnett was responsible for instituting criminal charges against Plaintiff.

Assuming *arguendo* that the Court finds that Sheriff Stinnett was responsible for instituting criminal charges against Plaintiff, Plaintiff cannot establish the third element of § 1983 malicious prosecution claim. A federal court must give a state-court judgment the same preclusive effect that the judgment would be given under the law of the state in which the judgment was entered. O'Reilly v. County Board of Appeals for Montgomery County, Maryland, 900 F.2d 789, 791 (4th Cir. 1990); Alston v. Robinson, 791 F. Supp. 569 (D. Md. 1992), (citing Migra v. Warren City School Dist. Board of Education, 465 U.S. 75 (1984)). This requirement applies in § 1983 actions. Haring

v. Prosise, 462 U.S. 306, 323 (1983).  Therefore, Maryland law will determine whether Plaintiff can re-litigate the issue of whether Sheriff Stinnett had probable cause to arrest him.

In Asuncion, supra, the plaintiff was convicted on a disorderly conduct charge in the Montgomery County District Court.  A jury in the Montgomery County Circuit Court subsequently found him not guilty in a *de novo* trial.  After his conviction was reversed, the plaintiff brought a § 1983 claim against the defendants.  Applying Zablonsky, supra, the Court held that the plaintiff's conviction in the Montgomery County District Court established as a matter of law that probable cause existed and granted the defendant's motion for summary judgment on the grounds that the plaintiff could not establish the third element of his § 1983 malicious prosecution claim.

Based upon the Court's holding in Asuncion and Zablonsky, it is clear that Plaintiff's conviction based upon a guilty plea establishes as a matter of law that Sheriff Stinnett had probable cause to arrest Plaintiff.  Therefore, under Maryland law, Plaintiff cannot now re-litigate the issue, and Sheriff Stinnett is entitled to summary judgment on Plaintiff's § 1983 malicious prosecution claim.

Moreover, the application of common law principles also precludes an individual that has plead guilty or been convicted in state court from bringing a Fourth Amendment claim under 42 U.S.C. § 1983.  In Cameron v. Fogarty, 806 F.2d 380 (2nd Cir.  1986) cert.  denied, 481 U.S. 1016 (1987), the Second Circuit considered whether common law principles, applicable to § 1983

actions, rather than collateral estoppel, could defeat a Fourth Amendment claim under 42 U.S.C.

§ 1983 following a conviction.  The Court stated:

> [T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment or malicious prosecution was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested. . . . This rule 'represents the compromise between two conflicting interest of the highest order — the interest in personal liberty and the interest in apprehension of criminals,' and constitutes a refusal as a matter of principle to permit any inference that the arrest of a persons thereafter adjudged guilty had no reasonable basis.  The law enforcement officer is given this protection because he has a duty to the public to prevent crime and arrest criminals; the performance of these duties would be seriously impaired unless peace officers were given considerable discretion in their performance and protected from liability for the consequences of honest and reasonable mistakes.

> *            *            *

> Where the civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest. *See*, *e.g. Singleton v. City of New York*, 632 F.2d at 195 ("common law rule that termination of the earlier proceedings in favor of the accused is an essential element of a malicious prosecution claim has generally been adopted and applied by federal courts" in actions under § 1983).  Thus, in *Poimccy v. Ryan*, 396 F. Supp.  at 127, the court summarily dismissed a § 1983 action based on an arrest without probable cause, concluding that the common-law principle barring post-conviction suits for false arrest and false imprisonment was applicable to this type of action under § 1983.

> *            *            *

> In sum, we conclude that the proper accommodation between the individual's interest in preventing unwarranted intrusions into his liberty and society's interest in encouraging the apprehension of

> criminals requires that § 1983 doctrine be deemed, in the absence of
> any indication that Congress intended otherwise, to incorporate the
> common-law principle that, where law enforcement officers have
> made an arrest, the resulting conviction is a defense to a § 1983 action
> asserting that the arrest was made without probable cause.

Cameron, 806 F.2d at 387-9 (internal citations omitted).  See also Malady v. Crunk, 902 F.2d 10 (8th

Cir. 1990)(adopting standard announced in Cameron); Howard v. Dickerson, 34 F.3d 978, 981 n.

2 (10th Cir.)  (Noting that "a conviction represents a defense to a § 1983 action asserting arrest

without probable cause."); Walker v. Schaeffer, 854 F.2d 138 (6th Cir.  1988)(adopting standard

announced in Cameron); but see Rose v. Bartle, 871 F.2d 331 (3d. Cir. 1989); Patterson v. Leyden,

947 F. Supp.  1211 (N.D. Ill.  1996) (rejecting standard adopted in Cameron).  In Bey v. Brigeton

Police Department, 775 F. Supp.  1255 (E.D. Mo.  1991), the Court applied the standard adopted

in Malady to civil matters in which a plaintiff pled guilty to criminal charges pending against him.

The Fourth Circuit has not opined on the issue in a published opinion.  The Fourth Circuit

has, however, in U.S. v. Hoffman, 929 F.2d 692, 1991 WL 41503 (4th Cir.  1991)(unpublished)

(attached hereto as Exhibit R) cited affirmatively to both Cameron and Malady in a matter

originating from the United States District Court for South Carolina.  In Hoffman, the Court held

that a plaintiff's claim that he was unlawfully seized because a police officer swore out a false

warrant was precluded by the plaintiff's criminal conviction.

In addition, Plaintiff's own expert does not dispute that there was probable cause to arrest

Plaintiff on the evening in question.  Although Plaintiff's expert may disagree with how the

investigation proceeded after Plaintiff was taken into custody, he does not dispute that it was

proper, under the law, to take Plaintiff into custody based upon the information the investigating

officers had in their possession.

Finally, the fourth element of a state malicious prosecution claim, malice, is immaterial

when considering a § 1983 malicious prosecution claim.  Brooks, 85 F.3d at 184, n.5.  A proper

Fourth Amendment inquiry does not take into consideration subjective factors such as malice.

Instead, a Fourth Amendment inquiry focuses on the objective reasonableness of the defendant's

actions.  Id.

There is no dispute that it was reasonable, under the circumstances, to take Plaintiff into

custody.  Mr. Holland, Plaintiff's cousin, told police that Plaintiff had asked him to be a lookout

while he and Mr. Long entered Ms. Pelicano's home.  In addition, Mr. Long told the police that

the handwriting on the checks stolen from Ms. Pelicano's home belonged to Plaintiff.  Based upon

this information, even Plaintiff's own expert believes that it was reasonable to take Plaintiff into

custody.  Exhibit O, p. 34.  Thus, it cannot be said that Sheriff Stinnett's minimal involvement in

prosecuting Plaintiff was unreasonable, and the Sheriff is entitled to summary judgment on

Plaintiff's § 1983 malicious prosecution claim.

## IX    SHERIFF STINNETT IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S 42 U.S.C. § 1983 MALICIOUS PROSECUTION CLAIM.

The defense of qualified immunity acknowledges that a police officer can make reasonable

mistakes regarding the "legal constraints on particular police conduct."  Saucier v. Katz, 533 U.S.

194, 205 (2001).  Government officials performing discretionary functions generally are shielded

from liability for civil damages insofar as their conduct does not violate clearly established

31

statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to spare police officers the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the scope of reasonable judgment. <u>Gooden v. Howard County</u>, 954 F.2d 960, 965 (4th Cir. 1992). The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. <u>Torchinsky v. Siwinski</u>, 942 F.2d 257, 260 (4th Cir.1991).

A court evaluating a claim of qualified immunity must: (1) identify the right allegedly violated; (2) determine whether the right was clearly established at the time of the alleged violation; and (3) whether a reasonable person in the police officer's position would have known that his or her actions violated that right. <u>Gould v. Davis</u>, 165 F.3d 265, 269 (4th Cir. 1998); <u>Solis v. Prince George's County</u>, 153 F.Supp.2d 793, 800 (D. Md. 2001).

"Clearly established" for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. <u>Anderson v. Creighton</u>, 483 U.S. 635 at 640; <u>Wilson v. Layne</u>, 526 U.S. 603, 614-615 (1999). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." <u>Id.</u>

Moreover, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established. <u>Saucier</u>, 533 U.S. at 202 (the inquiry as

to "whether the right was clearly established ...must be undertaken in light of the specific context of the case, not as a broad general proposition."); <u>Layne</u>, <u>supra</u>, 526 U.S. at 615; <u>Wiley v. Doory</u>, 14 F.3d 993, 995 (4th Cir. 1994) (in determining whether the particular right was clearly established, the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.)(<u>citing</u> <u>Pritchett v. Alford</u>, 973 F. 2d 307, 312 (4th Cir. 1992).

In conducting the immunity inquiry, the Court looks to settled law at the time of the allegedly unconstitutional act. <u>Robinson v. Balog</u>, 160 F.3d 183, 187 (4th Cir.1998) (<u>citing</u> <u>Harlow</u>, 457 U.S. at 818. In order to determine settled law, the Court determines whether "the law has 'been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state.'" <u>Wilson v. Layne</u>, 141 F.3d 111, 114 (4th Cir. 1998) (<u>quoting</u> <u>Wallace v. King</u>, 626 F.2d 1157, 1161 (4th Cir. 1980)); <u>see also</u>, <u>Balog</u>, <u>supra</u>, 160 F.3d at 187. If there is a "legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." <u>Wiley</u>, 14 F.3d at 995 (<u>citing</u> <u>Tarantino v. Baker</u>, 825 F.2d 772, 774-775 (4th Cir.1987)).

In circumstances in which the law is unsettled or murky, qualified immunity affords protection to an officer who takes an action that is not clearly forbidden, though later it may be shown to have been a mistake.  <u>Anderson</u>, 483 U.S. at 640 (stating that the particularity inquiry looks to whether "in light of pre-existing law the unlawfulness [was] apparent."); <u>Maciariello v. Sumner</u>, 973 F.2d 295, 298 (4th Cir.1992), <u>cert.</u> <u>denied</u>, 506 U.S. 1080 (1993).  In order for an official

to be deprived of his qualified immunity, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" <u>Gooden</u>, 954 F.2d at 968 (<u>quoting</u> <u>Anderson</u>, 483 U.S. at 640).

The specific right in question in this case is whether, in 1991, it was clearly established that the Fourth Amendment protected individuals from malicious prosecution. That right was not clearly established in 1991. The right was not clearly established until 1994, when the Supreme Court rendered its decision in <u>Albright</u>, <u>supra</u>. Consequently, the right to be free from malicious prosecution under the Fourth Amendment was not clearly established at the time of the incident in question and Sheriff Stinnett is entitled to qualified immunity on Plaintiff's § 1983 malicious prosecution claim.

Even if a right is clearly established, a defendant is still entitled to qualified immunity if a reasonable person in the police officer's position "could have failed to appreciate that his conduct would violate that right." <u>Collinson v. Gott</u>, 895 F.2d 994, 998 (4th Cir. 1990). "The very idea of reasonableness requires that courts accord interpretive latitude to official judgments." <u>Gott</u>, 895 F.2d at 998 (<u>citing</u> <u>Sevigny v. Dicksey</u>, 846 F.2d 953, 957 (4th Cir. 1988). "A police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." <u>Slattery v. Rizzo</u>, 939 F.2d 213, 216-217 (4th Cir. 1991).

Even if it was clearly established that an individual had a right under the Fourth Amendment not to be maliciously prosecuted in 1991, Sheriff Stinnett's actions were objectively

34

reasonable.  Although his involvement was minimal, Sheriff Stinnett was actively involved, at least for a few days, in the Pelicano murder investigation.  During those few days, Sheriff Stinnett, along with Trooper Newcomer, were advised by Mr. Howard and Mr. Long that Plaintiff was somehow involved in what transpired in Ms. Pelicano's home at the time of her murder.

Based upon this information, Sheriff Stinnett fulfilled his sworn duty to protect the safety of the people of Calvert County, and participated in the arrest of Plaintiff.  Plaintiff contends in part that additional portions of the investigation, including determining whether Plaintiff's fingerprints or DNA matched with evidence collected at the scene and whether it was Plaintiff's handwriting on the checks recovered from the scene, should have been concluded before he was arrested.  However, a reasonable person in Sheriff Stinnett's position would not have waited the days or weeks it would have taken to receive this information before arresting Plaintiff.  Nothing in the record suggests that Sheriff Stinnett had any reason not to believe Mr. Holland and Mr. Long when they implicated Plaintiff as being involved in Ms. Pelicano's murder.  Sheriff Stinnett had to do what he could to protect the citizens of Calvert County from a potential criminal.  Waiting days or weeks to obtain test results to corroborate information collected from the public would have posed a potential risk of harm to the community at large.  Therefore, based upon the information provided by Mr. Holland and Mr. Long, it cannot be said that the Sheriff's actions were unreasonable, and he is entitled to qualified immunity on Plaintiff's § 1983 malicious prosecution claim.

**X    PLAINTIFF'S § 1981 IS BARRED BY THE STATUE OF LIMITATIONS.**

The statute of limitations for § 1981 claims is determined by reference to state law. Delaware State College v. Ricks, 449 U.S. 250, 255 n.5. (1980).  Under Maryland law, the statute of limitations applicable to § 1981 claims is the three year statute of limitations.  Evans v. C & P Tel. Co., 535 F. Supp.  499, 509 (D.  Md.  1982); Linder v. Litton Sys., 81 F.R.D. 14, 17 (D.  Md.  1978); see also MD. CODE ANN CTS. & JUD.  PROC. § 5-101.  The statue of limitations begins to run "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.  Brooks, supra, 85 F.3d at  181 (quoting Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 955 (4th Cir.  1995 (en banc), cert. denied, 516 U.S. 1177(1996)).

In the instant matter, although not actually plead, it appears that Plaintiff's § 1981 arises from his arrest on June 20, 1991.  Plaintiff has adduced no competent evidence that either the County or Sheriff Stinnett performed any discriminatory acts directed at him during the three years prior to him filing suit.  Applying the three year statute of limitations, Plaintiff had three years from June 20, 1991, to file his § 1981 claim against Sheriff Stinnett.  He did not.  Plaintiff did not file his claims until February 7, 2002, well beyond the expiration of the statute of limitations. Consequently, the County and Sheriff Stinnett are entitled to summary judgment on Plaintiff's § 1981 claim.

**XI    THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S 42 U.S.C. § 1981 CLAIM  (COUNT VIII).**

Assuming *arguendo*, the Court finds that Sheriff Stinnett is an employee of the County, (and clearly he was not) the County's liability for the Sheriff's actions is limited.  A county cannot be

36

found liable under § 1981 on a theory of *respondeat superior* for its employee's violations of § 1981. Jett v. Dallas Independent School District, 491 U.S. 701 (1989); Crowley v. Prince George's County, 890 F.2d 683, 685 (4th Cir. 1989); Talley v. Farrell, 156 F. Supp. 2d 534, 540 (D. Md. 2001). In order to hold a county liable under § 1981, a plaintiff must establish that an employee's actions were the result of the county's official custom or policy. Dennis v. County of Fairfax, 55 F. 3d 151, 156 (4th Cir. 1995) Crowley, 890 F.2d at 685.

Although Plaintiff has alleged that the County has adopted policies, customs and practices which led the individual Defendants to discriminate against him based on his race, Plaintiff has adduced no evidence establishing that such a policy, custom or practice exists. Plaintiff has not established that the County has adopted or implemented any official custom or policy that had a discriminatory effect on him. Because Plaintiff has failed to adduce any evidence that the County has adopted any policies that intentionally discriminate on individuals based upon race, the County is entitled to summary judgment on his § 1981 claim.

## XII    SHERIFF STINNETT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S 42 U.S.C. § 1981 CLAIM (COUNT VIII).

Section 1981 provides a remedy for individuals to seek redress when they are denied certain rights on the basis of race. Robertson v. Maryland Department of Personnel 481 F. Supp. 108, 112 (1978). Ordinarily, however, "a claim of false arrest cannot typically provide the basis for a § 1981 claim." Brew v. City of Emeryville, 138 F. Supp. 2d 1217 (N.D. Cal. 2001) (citing Morgan v. the District of Columbia, 550 F. Supp. 465, 467 (D.D.C. 1982) aff'd 725 F.2d 125 (D.C. Cir. 1983). Although no court in this Circuit has ever determined that § 1981 applies in matters involving

37

allegations of "racially motivated misues of governement power," several other Courts have determined that § 1981 does apply in such matters.  Exhibit A, p. 14.

In order to establish a § 1981 claim, a plaintiff must prove that (1) he is a member of a racial minority; (2) the defendant intentionally discriminated against him on the basis of race; and (3) the discrimination concerned one or more of the rights enumerated in the statute.  See Robertson 481 F. Supp.  at 111-12.

A plaintiff can establish intentional discrimination by either direct or indirect evidence of discrimination.  Mullen v. Princess Anne Volunteer Fire Co., Inc. 853 F.2d 1130, 1138 (4th Cir. 1988). Regardless of the manner in which a plaintiff attempts to prove intentional discrimination, she maintains the "burden of persuading the trier of fact that the defendant intentionally discriminated against [her] . . .."  Mullen, 853 F. 2d at 1138 (citing Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  A plaintiff's own subjective belief that a defendant's actions or omissions were motivated by discriminatory intent is insufficient to establish a § 1981 claim.  Brown v. Ameritch, 1997 WL 43224, *6 (N.D. Ill.  1997) (copy attached hereto as Exhibit S).   Similarly, the mere fact a plaintiff is black and a defendant is caucasian is insufficient to establish that the defendant's actions were motivated by race.  See Elmore v. City of Kansas City, Kansas, 1989 WL 103641, *9  (D. Kan.  1991) (copy attached hereto as Exhibit T)(holding that fact that plaintiff and defendant were allegedly of different races, defendant allegedly used excessive force during arrest and swearing at plaintiff were insufficient to establish § 1981 claim, entitling defendant to summary judgment on the plaintiff's § 1981 claim.)

Plaintiff has adduced no competent evidence that Sheriff Stinnett intentionally discriminated against him because of his race.   There is no evidence that the Sheriff made any racially derogatory statements to Plaintiff or about Plaintiff at any time during questioning.  There is not even one fact from which the Court could infer that Sheriff Stinnett's actions were motivated by race.

During his deposition, Plaintiff was asked for information regarding the basis of his claim that he was arrested based on his race.  Plaintiff testified:

Q.  Do you contend you were arrested on the basis of your race?

A.  Yes, Sir.

Q.  Tell me as fully and completely as you can why you were arrested on the basis of your race?

   Mr. Katz: Objection.  You can answer.

A.  Well, I believe – well, I believe because there was no evidence that said I did this crime.

Q.  You do acknowledge, though, that you told the police you had some involvement, correct?

A.  Yes, sir.

Q.  Is there any other reason why you believe that you were arrested based on your race?

A.  Because I believe Bootsie Stinnette [sic] is racist from what I heard.

Q.  This is what you heard from other people, correct?

A.  Right .  Yes, sir.

39

Q.  You had no prior involvement with Mr. Stinnette, [sic] correct?

A.  No, sir.

Q.  Is it fair to say that the only involvement you ever had with Mr. Stinnette [sic] was June 20 and June 21, 1991?

A.  Yes, sir.

Exhibit H, pp. 84-85.

Based upon this testimony, it is clear that Plaintiff has no basis for his claim that Sheriff Stinnett's actions were based upon race. There is nothing in the record that establishes that Sheriff Stinnett had a history of discriminating against individuals based upon race.

The record does include the testimony of Even Barbara Stinnett,[3] who has known Sheriff Stinnett for 30 to 35 years. She has testified that during the last thirty years she heard Sheriff Stinnett use the word "nigger" on one occasion. See Deposition of Barbara Stinnett, dated April 28, 2003, incorporated herein by reference and attached hereto as Exhibit U, pp. 16, 24 & 26. That one occasion, which she believes was in 1999, was the first and only time she ever heard Sheriff Stinnett use that word. Exhibit  p. 22 & 32. Ms. Stinnett also testified that she never heard Sheriff Stinnett use any other words that were derogatory towards African Americans or any other nationality or race. Exhibit , p. 32. The use of a racial epithet on one occasion, however, is insufficient to establish racial animus. Robinson v. Montgomery Ward and Co., Inc., 823 F.2d 793, 797 (1987)(trial record established that defendant had referred to a black employee, not the

---

[3] Ms. Stinnett is the widow of Sheriff Stinnett's cousin.

plaintiff, as a nigger); <u>Middlebrooks v. University of Maryland at College Park</u>, 980 F. Supp. 824, 832-833 (1997)("isolated examples of possibly racially motivated behavior", standing alone, without evidence that the Plaintiff was discriminated against because of her race are insufficient to establish a 42 U.S.C. § 1981 claim).

Based on the record before this Court, Plaintiff cannot establish an intentional discrimination claim under § 1981 against Sheriff Stinnett. Plaintiff has adduced no evidence that Sheriff Stinnett would have treated him differently if he had been white. The record is devoid of any evidence that Sheriff Stinnett's interactions between himself and Plaintiff were motivated by race. Consequently, Sheriff Stinnett is entitled to summary judgment on Plaintiff's § 1981 claim.

<u>CONCLUSION</u>

Based on the foregoing, Calvert County and Sheriff Lawrence Stinnett submit that there is no dispute of material fact regarding Plaintiff's claims against them and they request that this Honorable Court grant their Motion for Summary Judgment.

Respectfully submitted,

ALLEN, KARPINSKI, BRYANT
& KARP

BY: _____
KEVIN KARPINSKI

_____
MATTHEW PETER
100 E. Pratt Street
Suite 1540
Baltimore, Maryland 21202
(410)727-5000

41

Attorneys for Calvert County and Lawrence Stinnett

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  28th  day of December, 2003, a copy of Lawrence

Stinnett's Motion for Summary Judgment was sent via-electronic mail to:

Alan Hilliard Legum, Esquire
ALAN HILLIARD LEGUM, P.A.
275 West Street
Suite 305
Annapolis, Maryland 21401

Joel L. Katz, Esquire
JOEL L. KATZ, L.L.C.
2060 West Street
Annapolis, Maryland 21401
Attorneys for Plaintiff

Donald E. Hoffman
Assistant Attorney General
Maryland State Police
1201 Reisterstown Road
Pikesville, Maryland 21208
Attorney for Defendants State of Maryland, Brian Newcomer and Richard Sheldon

_____
Of Counsel for Calvert County
and Lawrence Stinnett

42