DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 23, 2003

Page 1

```
1   ANTHONY GRAY              *  IN THE U.S. COURT

2          Plaintiff          *  FOR THE DISTRICT

3   vs.                       *  OF MARYLAND

4   STATE OF MARYLAND, et al  *  No.  CCB-02-CV-385

5          Defendants

6

7          *     *     *     *     *     *

8

9   Deposition of:      BRIAN NEWCOMER

10

11           Pursuant to notice, the deposition was

12  taken on April 3, 2003, at 2060 West Street,

13  Annapolis, Maryland, commencing at approximately

14  10:30 a.m., before Connie E. Bennett, a Notary

15  Public.

16

17

18

19

20

21
```

EXHIBIT B

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 23, 2003

Page 4

1           P R O C E E D I N G S

2   Whereupon:

3              BRIAN NEWCOMER,

4   was called on for examination by counsel, and after

5   being duly sworn according to law was examined and

6   testified as follows:

7           EXAMINATION BY COUNSEL FOR PLAINTIFF

8              MR. KATZ:  Before we start, I want to let

9   everybody know, I plan on keeping this deposition

10  open until I discern the discoverable information

11  with regard to personnel records, as well as full

12  answers to their interrogatories.  I talked to you on

13  the phone about getting appropriate answers.

14              In addition to that, I want to put on the

15  record that I will not tolerate being threatened on

16  my own parking lot.

17              MR. STINNETT:  You weren't threatened.

18              MR. KATZ:  Wait a minute.  You come here,

19  I offered to give you a cup of coffee, and let you

20  sit inside.  Don't tell me you're going to get even

21  with me, and you are not putting up with this shit,

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 23, 2003

Page 25

1    2.

2             While they are looking at this exhibit,

3    what was the working relationship in 1991 between the

4    Maryland State Police and the Sheriff's Department?

5         A.    Excellent.

6         Q.    And who maintained -- let me be more

7    specific, with regards to Pellicano murder case, who

8    was in charge of the investigation, and what I mean

9    in charge, was it the jurisdiction of the Sheriff's

10   Department, or the jurisdiction of the Maryland State

11   Police?

12        A.    I don't understand.

13        Q.    Well, who would be in charge, who is the

14   lead person, who was the lead person in the

15   investigation of the Pellicano murder case?  Was it

16   your agency, or the Sheriff's Department?

17        A.    My agency.

18        Q.    And did you have exclusive control, or did

19   the Sheriff's Department have some control in there?

20        A.    It was a joint investigation.

21        Q.    Did you have routine meetings with the

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 23, 2003

Page 31

1   came from a canvas from a roadblock, and people

2   passing through there.  I don't recall any

3   information leaving the house, to that nature.

4       Q.    Well, you were involved in the

5   investigation; is that correct?

6       A.    Yes, sir.

7       Q.    And you would agree with me, as part of

8   your investigation, and as part of the procedures you

9   were taught, both in the Maryland State Police

10  Training Academy, and your continuing education, that

11  you would review periodic reports that would come in

12  from other troopers that are also investigating this

13  case, so that you can be on top of everything; isn't

14  that a fair statement?

15      A.    Yes, sir.

16      Q.    Now, there came a point in time that you

17  arrested Anthony Gray?

18      A.    Yes, sir.

19      Q.    And was that arrest based upon a warrant?

20      A.    No, sir.

21      Q.    What was it based upon?

Page 32

1    A.    Probable cause.

2    Q.    And what was the basis of your probable

3 cause to arrest him?

4    A.    It was outlined in a statement of charges

5 dated June 21, 1991.

6    Q.    And do you have that with you?

7    A.    No, sir.

8    Q.    And who has those records?

9    A.    The Court, the Circuit Court for Calvert

10 County.

11              (Exhibit No. 3

12              was marked for identification.)

13   Q.    Okay.  Before this, I want to ask one

14 other thing.  In Deposition Exhibit No. 1, can you

15 indicate to me -- never mind --

16         MR. KATZ:  Here you go, gentlemen.

17         All right, Mr. Hoffman.

18         (Pause)

19         BY MR. KATZ:

20   Q.    Now, you indicated that they were

21 contained in the statement of probable cause, or the

DEPOSITION OF BRIAN NEWCOMER
TAKEN ON APRIL 23, 2003

Page 40

1   the bushes. Holland positioned himself to be a

2   lookout, and when the victim arrived home in her

3   vehicle, Holland stated he walked away.

4           On 05, 16, 91, 2 stolen checks were

5   recovered, partially forged and torn behind the Mount

6   Hood Community Center. Holland looked at a photocopy

7   of the recovered checks, and stated that Long had

8   carried the checks to that location.

9           On 6,19,91, Leonard Long was arrested for

10  an unrelated crime and was advised of Miranda

11  warnings. He agreed to submit to an interview

12  without the presence of an attorney. Long advised

13  that he had went to school with Anthony Gray, the

14  defendant and because of that, he was very familiar

15  with the handwriting of Anthony Gray.

16          When presented with a photocopy of the

17  recovered checks, Long stated that the writing on the

18  checks was identical to the handwriting he knew of

19  Anthony Gray.

20       Q.   So, it's my understanding, based upon

21  these 2 statements, that you went down and you

Page 41

1   arrested Anthony Gray?

2       A.   Yes, sir.

3       Q.   Okay. Now, you have indicated 2 things to

4   me. You indicated checks were taken. I presume they

5   were Pellicano checks?

6       A.   Yes, sir.

7       Q.   You also indicated to me where they were

8   found, and you also indicated to me that there were

9   signatures on the checks.

10      A.   Yes, sir.

11      Q.   Now, I am sure, based upon your training,

12  experience, and education as an investigator with the

13  Maryland State Police, that you sent these checks out

14  to a handwriting expert for evaluation; isn't that a

15  fair statement?

16      A.   Yes, sir.

17      Q.   And as a result of that, you were provided

18  information with regard to whether or not Long, Gray,

19  or Holland's signatures matched up with the forged

20  signatures on the checks; is that correct?

21      A.   Yes, sir.