```
 1           IN THE CIRCUIT COURT FOR CALVERT COUNTY, MARYLAND

 2

 3   STATE OF MARYLAND

 4        vs                                            91-407

 5   LEONARD LONG,

 6        Defendant.

 7   _____/

 8

 9            REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS
                    (Motion to Suppress - Testimony)
10

11                                      Tuesday, November 12, 1991

12                                      Prince Frederick, Maryland

13

14   BEFORE:

15        HONORABLE THOMAS A. RYMER, Associate Judge

16

17   On Behalf of the State:

18        WARREN SENGSTACK, State's Attorney

19   On Behalf of the Defendant:

20        JOEL KATZ, ESQUIRE

21

22

23

24   Deborah L. Spear
     Court Reporter
25   Prince Frederick, MD
```

EXHIBIT F

C O N T E N T S

Motion to Suppress
Statements of 6/9 & 6/19

| State's Witnesses | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| WILLIAM SOPER | 4 | 16 | 27 | -- |
| SHANNON EARL | 28 | 34 | 38 | -- |

Defendant's Witnesses

| | | | | |
|---|---|---|---|---|
| LEONARD LONG | 42 | -- | -- | -- |

State's Rebuttal

| | | | | |
|---|---|---|---|---|
| SHERIFF L.C. STINNETT | 45 | 47 | -- | -- |

Motion to Suppress
Statements of 6/20 & 6/21

State's Witnesses

| | | | | |
|---|---|---|---|---|
| CORPORAL CHARLES WILLIAMS | 51 | 64 | -- | -- |
| TFC BRIAN NEWCOMER | 70 | 75 | -- | -- |
| CORPORAL WILLIAMS (recalled) | 82 | 83 | 84 | 84 |
| TFC NEWCOMER (recalled) | 86 | 87 | -- | -- |

EXCERPT OF PROCEEDINGS

THE COURT: Back on the record on Leonard Long, and we do have a rule on witnesses still, don't we, in this particular case?

MR. SENGSTACK: Yes. Deputy Soper is in the courtroom. We would ask that he remain there. I would just say by way of introduction, I had proposed to take the court through the various statements starting with them first in chronological order. I can't do that because Deputy Earl was called to go to some altercation in the shopping center. When he returns, we will go back and pick him up.

Assuming that Mr. Katz has no introductory remarks --

MR. KATZ: I just want to know one thing. Is he going to return tonight?

MR. SENGSTACK: Oh, most definitely.

MR. KATZ: Oh, okay. I mean we are down in the country. They do things a little differently.

THE COURT: He will return before it gets too late, Mr. Katz, long before we go home.

MR. KATZ: Okay.

MR. SENGSTACK: Call Deputy Soper.

For the record, Your Honor, this has to do with the statement of June the 19th.

1   Whereupon,

2                    DEPUTY WILLIAM C. SOPER

3   was called on behalf of the State and, having been duly sworn

4   by a Notary Public, was examined and testified as follows:

5                        DIRECT EXAMINATION

6   BY MR. SENGSTACK:

7       Q.   Deputy Soper, would you state your name and
8   occupation, please.

9       A.   Detective William C. Soper, Calvert County
10  Sheriff's Department, currently assigned to the Criminal
11  Investigative Unit.

12      Q.   Deputy Soper, how long have you been with the
13  Sheriff's Department?

14      A.   I have been with the Sheriff's Department since
15  February of 1988.

16      Q.   How long have you been an investigator?

17      A.   Been an investigator for approximately two years.

18      Q.   Directing your attention to --

19           MR. KATZ:  Can I voir doir him with regard to
20  his qualifications as a police officer?

21           MR. SENGSTACK:  Objection.  Irrelevant for
22  purposes of this hearing.

23           MR. KATZ:  Well, it wouldn't be irrelevant if the
24  man has --

25           THE COURT:  Why?  He is not going to be used as

 1        Q.    What did you next do?

 2        A.    Basically from there I really didn't lead the
 3   interview process, but I was present during the interview
 4   process.

 5        Q.    You indicated the defendant was advised of his
 6   rights. I believe you indicated that when asked if he wanted
 7   an attorney that he did not; is that correct?

 8        A.    That's correct. And as I stated, he stated that
 9   he understood his rights.

10        Q.    Did the defendant then make a statement?

11        A.    Yes, he did.

12        Q.    What was the nature of the statement?

13        A.    Basically he was questioned in regards to his
14   activity on the day of the homicide. He advised that on the
15   day of the homicide he was with his grandmother until
16   approximately 1700 hours. At a later time he was showed a
17   check that was recovered, and during the presentation of
18   showing him the check, he advised that he thought it was
19   in fact in Mr. Gray's handwriting.

20        Q.    Mr. Gray being the co-defendant?

21        A.    The co-defendant in the case.

22        Q.    Right.

23        A.    He was then asked why he thought it was Mr. Gray's
24   handwriting or how did he know it was Mr. Gray's handwriting,
25   and he informed us that in fact he had gone to school with

1  Mr. Gray and was very familiar with his handwriting.

2  Q.    How old was the defendant when this statement
3  was made, if you know?

4  A.    How old was he?

5  Q.    Yes.

6  A.    I don't have the information. I would have to
7  check my notes.

8  Q.    You may if you like, if you have that information
9  with you.

10 A.    I don't have it with me.

11 Q.    Can you describe the defendant's level of
12 intelligence? Did he appear to be of average intelligence,
13 introverted, extroverted?

14 A.    He appeared to be of average intelligence, not
15 low I.Q. level, and understood all aspects of the interview
16 process, answered the questions.

17 Q.    Do you know whether the defendant had any prior
18 criminal record?

19         MR. KATZ: Objection.

20         MR. SENGSTACK: Your Honor, that is one of the
21 11 factors to be considered --

22         THE COURT: Yes, I think for this hearing --
23 overruled.

24         THE WITNESS: Yes, he did have a past criminal
25 record.