

1989 WL 103641
(Cite as: 1989 WL 103641 (D.Kan.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Kansas.

Carolyn ELMORE and Aaron Elmore, Jr., Plaintiffs,
v.
CITY OF KANSAS CITY, KANSAS, et al.,

**CIV. A. No. 88-2605-O.**

Aug. 10, 1989.

Denise L. Adams, Rosie M. Quinn, Kansas City, Kan., for plaintiffs.

Maurice J. Ryan, Assistant City Attorney, Kansas City, Kan., for defendants.

*MEMORANDUM AND ORDER*

EARL E. O'CONNOR, Chief Judge.

*1 This matter is before the court on the summary judgment motion [FN1] of the defendants the City of Kansas City, Kansas (City), the Kansas City, Kansas, Police Department (Department), and Richard J. Asten (Asten). The plaintiffs Carolyn Elmore (Carolyn) and Aaron Elmore Jr. (Aaron) brought this action in connection with their arrests, alleging causes of action under 42 U.S.C. §§ 1981, 1983, and 1985, and common law claims of assault and false arrest.

When considering a motion for summary judgment, we must examine all evidence in the light most favorable to the opposing party. *Prochaska v. Marcoux,* 632 F.2d 848, 850 (10th Cir.1980), *cert. denied,* 451 U.S. 984 (1981). If the moving party bears the burden of proof at trial, he must show, through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). This burden is met when the moving party identifies those portions of the record demonstrating an absence of a genuine issue of material fact. *Id.* at 323.

If the moving party meets his requirement, the burden shifts to the nonmoving party, who "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986) (emphasis added). The trial judge then determines whether a trial is needed--"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*

The pertinent facts are as follows: [FN2] In the early morning on November 1, 1987, the Elmores had an argument. Carolyn drove into an underground parking lot under the Kansas City, Kansas City Hall in an attempt to avoid Aaron. He followed her, parked and exited his automobile, and resumed arguing. Officer Sophia Barajas (Barajas) approached the Elmores and asked if there was a problem. Carolyn said she did not want to talk to or be followed by her husband, and Officer Barajas ordered Aaron away from the vehicle.

Carolyn drove from the underground lot to another parking lot, and Aaron followed her and parked his vehicle so that Carolyn could not drive away. Officer Barajas called for a back-up unit, and she followed the Elmores to the second parking lot; she and Officer Richard Asten arrived at the lot at about the same time. Aaron was outside Carolyn's car. In his statement during a police internal affairs investigation, Aaron stated that "we were just arguing and I was getting kind of loud, you know." In his statement, Officer Asten said that he could hear a man screaming and a woman crying as he approached the lot. Officer Barajas said in her statement that Aaron was shouting and Carolyn "was crying really bad." In an affidavit dated June 26, 1989, the day before the plaintiffs filed their response to the defendants' summary judgment motion, Carolyn stated that "[d]uring the time Aaron was outside my vehicle he was merely talking to me. He was not arguing loudly."

*2 Officers Barajas and Asten ordered Aaron to back away from his wife's vehicle, and he complied. Officer Asten approached Aaron, who said to his wife, "For every time he hits me with that stick, I'm going to hit you twice." Carolyn then asked the officers not to harm her husband. Officer Asten advised Aaron that he was under arrest for disorderly conduct, and he continued to approach Aaron. The events that followed are disputed. Officer Asten's statement indicates that Aaron raised his hand, and that Officer Asten then slapped him twice. Aaron's statement and Carolyn's affidavit indicate that Aaron's hands remained at his sides, and that Officer Asten nonetheless struck Aaron with his fist four times. Aaron's statement also indicates that after striking him, Officer Asten said, "You don't like that, do you?" Aaron required no medical or dental treatment for his jaw, but he did take Tylenol to relieve the pain.

Officer Asten placed Aaron in his (Officer Asten's) vehicle and began questioning him. Officer Barajas told Carolyn that she could leave; however, Aaron's automobile was blocking her exit. Officer Barajas asked Carolyn to move Aaron's vehicle, but because she was upset and inexperienced with a manual transmission, Carolyn failed.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works


EXHIBIT

Officer Asten then allowed Aaron to move the vehicle, after which Aaron returned to the squad car.

Officer Barajas then asked Carolyn whether she wished to press charges against her husband, and Carolyn declined. Pursuant to Department policy, and because the officers suspected domestic violence, Officer Barajas asked Carolyn to identify herself. Carolyn refused. Officer Barajas informed Officer Asten, who approached Carolyn's vehicle and asked her for her driver's license. The subsequent events are disputed. The statements of Officers Asten and Barajas indicate that because Aaron was calmly sitting in the squad car, Officer Asten began to question whether Carolyn was the instigator of the disturbance. Further, Officers Asten and Barajas could smell alcohol on Carolyn's breath. When Officer Asten asked for her license, Carolyn asked him why he needed it. Officer Asten replied that she was operating a motor vehicle, and he needed to see her license. Carolyn replied, "Get the fuck away." After she continued to refuse to provide her license, Officer Asten advised Carolyn that she was under arrest for disorderly conduct and obstructing an officer. Officer Asten attempted to open the door, but it was locked; he and Officer Barajas reached inside and unlocked the door while Carolyn attempted to roll up the window and scratched the officers. Officer Asten then opened the door. Carolyn's vehicle was slowly rolling backwards toward a squad car as Officer Asten attempted to coax her out. Fearing an accident, Officer Asten pulled Carolyn from the vehicle, jumped inside, and stopped it. During this activity, Carolyn fell to the ground. She was then taken into custody.

Aaron's statement and Carolyn's statement and affidavit tell a different story. Carolyn had not been drinking that night. After Carolyn said that she did not want to press charges, Officer Asten approached Carolyn's vehicle and asked for her driver's license. She said that she had rights and she wanted to know why he wanted her license. Officer Asten replied, "I don't have to give you a God-damned reason, just give me the license." He and Officer Barajas then reached into the car and struggled with Carolyn in an attempt to unlock and open the door. During this struggle, the window, lock system, and electric seat control received damages totalling $100. Eventually, the door was opened, and Officer Asten grabbed Carolyn and "body- slammed" her to the ground. Carolyn's automobile then began to roll backwards, and Officer Asten jumped in and stopped it. Carolyn got up and was crying when Officer Asten grabbed her, threw her against the vehicle, and handcuffed her.

*3 Officer Mike Vega then took charge of Carolyn. In his statement, Officer Vega said that Carolyn was not thrown to the ground, and that although he could not smell alcohol on her breath, he believed that she was intoxicated.

Carolyn was charged with resisting arrest, disorderly conduct, and obstructing an officer. Aaron was charged with resisting arrest and disorderly conduct. Because of Officer Asten's beliefs that (1) Carolyn was intoxicated and could not drive safely, and (2) domestic abuse may have played a part in the disturbance, Carolyn and Aaron were both placed in four-hour holds. They were booked at 3:00 a.m. and released to the custody of a relative at 4:00 a.m. At a trial, Carolyn was found guilty of obstructing an officer and not guilty of disorderly conduct and resisting arrest; Aaron was found guilty of disorderly conduct and not guilty of resisting arrest.

The Elmores made a complaint to the Department's internal affairs division. Pursuant to the ensuing investigation, the Elmores and Officers Asten, Barajas, and Vega made and signed statements. Following the investigation, the division determined that no Department rules or regulations had been violated by the officers.

The Elmores filed this action against the city, the department, and Officer Asten, seeking a total of $8,500,000 in damages. Count 1, which deals with Carolyn, mentions 42 U.S.C. §§ 1981, 1983, and 1985, and seeks $500,000 in actual damages and $1,000,000 in punitive damages. Count 2 alleges assault against Carolyn and seeks $1,500,000. Count 3 claims a violation of Aaron's rights under section 1983 and seeks $500,000 in actual damages and $1,000,000 in punitive damages. Count 4 claims that Aaron was arrested without probable cause and that unreasonable and excessive force were used, thereby violating the fourth and fourteenth amendments; this count seeks $500,000 in actual damages and $1,000,000 in punitive damages. Count 5 alleges assault against Aaron and seeks $1,500,000. Count 6 alleges that Aaron was falsely arrested and imprisoned, and seeks $1,000,000. The defendants seek summary judgment on all counts.

I. *The Section 1983 Claims.*

The Elmores each make claims against Officer Asten, the department, and the city under 42 U.S.C. § 1983, which provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. ...

A. *Officer Asten.*

The defendant Officer Asten seeks summary judgment as to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the Elmore's section 1983 claims regarding the officer's decision to arrest, asserting that he is entitled to qualified immunity. [FN3] We have previously set forth the standards for qualified immunity:

*4 The doctrine of qualified immunity was described in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), where the Supreme Court stated "that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Formerly, the qualified immunity test had both an objective aspect and a subjective aspect. *See, e.g., Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214, *reh. denied,* 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975). An official was entitled to qualified immunity unless he knew or reasonably should have known his actions violated a plaintiff's constitutional or statutory rights, or he acted with malicious intention to deprive a plaintiff of his rights. *Id. Harlow* eliminated the subjective aspect of the qualified immunity test so that more claims could be resolved on summary judgment motions. *See McSurely v. McClellan,* 697 F.2d 309, 316 (D.C.Cir.1982). Thus, the qualified immunity test became compatible with the Court's goal of dispensing with insubstantial claims prior to trial. *Harlow,* 457 U.S. at 816-18, 102 S.Ct. at 2737-38; *see also Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

The functional details of qualified immunity are as follows: Qualified immunity is an affirmative defense which must be pleaded by the defendant. *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736. The burden then shifts to the plaintiff, who must convince the court that the law proscribing the defendant's conduct was clearly established at the time the defendant allegedly deprived the plaintiff of his constitutional or statutory rights. *Lutz v. Weld County School District No. 6,* 784 F.2d 340, 342-43 (10th Cir.1986). Whether the law was clearly established is a matter of law to be resolved by the court. *Id.* at 343. "[T]he court must focus on the specific nature of the conduct complained of and the state of the law with respect to the identified conduct at the time the official acted." *Myers v. Morris,* 810 F.2d 1437, 1459 n. 16 (8th Cir.1987); *see also Anderson v. Creighton,* -- U.S. --, --, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523, 532 (1987).

If the plaintiff fails to convince the court that the law was clearly established, the defendant is entitled to qualified immunity and judgment must be entered in his favor. *Burk v. Unified School District No. 329,* 646 F.Supp. 1557 (D.Kan.1986). However, if the plaintiff convinces the court that the law was clearly established, the court then determines whether the defendant has raised a factual issue as to whether there existed "exceptional circumstances" such that a reasonable person in the defendant's position would be unaware of the relevant legal standard. *Id.; see also Lutz* at 343. If the defendant has raised a factual issue as to exceptional circumstances, the fact-finder determines whether a reasonable person would be unaware of the legal standard. If so, the defendant is qualifiedly immune and the fact- finder does not reach the issue of whether the defendant's acts were a constitutional violation. If not, or if no factual issue as to exceptional circumstances is raised by the defendant, the fact-finder deliberates as to whether the defendant's acts violated the plaintiff's constitutional or statutory rights.

*5 *Staneart v. Board of Trustees of Ransom Memorial Hospital,* 684 F.Supp. 1573, 1575-76.

The defendant Officer Asten has asserted the defense of qualified immunity; thus, the burden shifts to the Elmores, who must convince the court that clearly established law proscribed Officer Asten's conduct.

First, the Elmore's assert that "the duty to arrest is ministerial and not discretionary." The court assumes that this assertion is an attempt on the Elmores' part to demonstrate that clearly established law prohibited Officer Asten's conduct. As such, it fails. We decline to accept the blanket assertion that all arrests are non-discretionary and therefore carried out under clearly established law.

Second, the Elmores assert that under clearly established law, there was no probable cause for their arrests. "Probable cause exists if the facts and circumstances within the arresting officer's knowledge ... are sufficient in themselves to warrant a person of reasonable caution to believe than an offense has been or is being committed." *State v. Abu-Isba,* 235 Kan. 851, ---, 685 P.2d 856, --- (1984).

As to Carolyn, we note that under K.S.A. 8-244, an operator of a motor vehicle "shall display [her driver's license] upon demand ... of any police officer." Further, K.S.A. 21-3808 is violated when "an identified officer was discharging his duty, and defendant knowingly and willfully obstructed 'that officer in the performance of that duty.' " *State v. Lee,* 242 Kan. 38, 42, 744 P.2d 845, --- (1987) (quoting *State v. Parker,* 236 Kan. 353, 365, 690 P.2d 1353, --- (1984)). Under the uncontroverted facts, Carolyn (1) did not provide Officer Asten with her driver's license upon demand, (2) refused to exit her car, and (3) attempted to keep the officers from opening her car door. In light of these actions and the law discussed above, we find that the law was not clearly established that Officer Asten had no probable cause to arrest Carolyn; thus, he is entitled to qualified immunity on Carolyn's section 1983 claim as it pertains to Officer Asten's decision to arrest.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

As to Aaron, the City's ordinances and K.S.A. 21-4101 proscribe disorderly conduct:

Disorderly conduct is, with knowledge or probable cause to believe that such acts will alarm, anger or disturb others or provoke an assault or other breach of the peace:

* * *

(c) Using offensive, obscene, or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others.

K.S.A. 21-4101. Moreover, the City's ordinances and K.S.A. 21-3408 proscribe assault, which "is an intentional threat or attempt to do bodily harm to another coupled with apparent ability and resulting in immediate apprehension of bodily harm." The facts are uncontested that Aaron and Carolyn were arguing in the parking lots. All of the witnesses except Carolyn in her late-dated affidavit state that the argument was loud. Further, it is uncontroverted that Aaron threatened to hit Carolyn twice for each time he was hit. Given these facts and the law, it was not clearly established that Officer Asten had no probable cause to arrest Aaron; thus, we will grant Officer Asten's motion as to the portion of Aaron's section 1983 claim dealing with his arrest.

*6 Officer Asten also seeks summary judgment on the Elmores' section 1983 claims of excessive force. [FN4] Although his supporting memorandum makes some reference to *Anderson v. Creighton* and qualified immunity, we believe that Officer Asten's basic argument regarding the excessive force claims is that his conduct does not rise to the level of a constitutional violation.

The Tenth Circuit has addressed the issue of a section 1983 claim arising from use of force by the police:

Not all force used by the police rises to a constitutional violation. But the use of *excessive* force on a pretrial detainee deprives the victim of life or liberty without due process in violation of the Fourteenth Amendment. Factors relevant to whether the use of force is excessive are the relationship between the amount of force used and the need presented, the extent of the injury inflicted, and the motives of the state officer. Force inspired by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience, or by malice rather than mere carelessness, may be redressed under section 1983.

*Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, 1379 (10th Cir.1985) (citations omitted), *cert. denied*, 474 U.S. 844. The *Hewitt* court went on to state that it need not determine "how egregious" police conduct must be to amount to a denial of substantive due process, as *Hewitt*

merely involved police negligence. *See id.*

However, other Tenth Circuit cases shed light on whether the alleged conduct in the instant action rises to the level of a section 1983 violation. In *Trujillo v. Goodman,* 825 F.2d 1453 (10th Cir.1987), the court restated the relevant factors as set forth in *Hewitt,* and added that the inquiry as to whether force is excessive such that it may be redressed under section 1983 "is a factual one, depending for its resolution on the totality of the circumstances presented, and is one properly reserved, in most instances, for the jury." *Trujillo,* 825 F.2d at 1458-59. In *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423 (10th Cir.1984), the circuit court stated as follows:

We have no problems with Alvin Lusby's claims against Wertz and Dunegan based on Wertz' conduct while transporting Alvin to jail. A police officer's use of excessive force is actionable under § 1983 as a constitutional violation. *Garrick v. City of Denver,* 652 F.2d 969, 972 (10th Cir.1981); *see also, Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981). The plaintiffs presented ample evidence that Wertz struck Alvin on the face without cause while he was handcuffed outside the Lawton police station and then shoved Alvin head first into a wall on the way into the station. From this evidence the jury could have concluded that Wertz used excessive force against Alvin.

*Lusby,* 749 F.2d at 1433. Similarly, in *Meade v. Grubbs,* 841 F.2d 1512 (10th Cir.1988), the Tenth Circuit held that the plaintiff's section 1983 claim of excessive force should not be dismissed where the plaintiff alleged that the defendants hit, kicked, and choked him. *See id.* at 1527.

*7 Based on these cases, we are of the opinion that summary judgment is unwarranted on the Elmores' claims of excessive force in violation of section 1983. When the facts are viewed in the light most favorable to the Elmores, Officer Asten hit Aaron in the face four times with a closed fist despite the fact that Aaron did not provoke or resist Officer Asten in any manner. Further, Officer Asten violently threw Carolyn to the pavement and then slammed her against a vehicle and handcuffed her. Based on the circumstances, Officer Asten's actions may have constituted excessive force, which is actionable under section 1983. *See Lusby,* 749 F.2d at 1433; *but see Damm v. Sparkman,* 609 F.Supp. 749, 751, 754-55 (D.Kan.1985) (where the district court held that a plaintiff who was hit in the face six to eight times by a police officer who had stated, "We'll have to show you....," did not have a cause of action under section 1983 because the "conduct [was] not an abuse of power that shocks the conscience of th[e] Court" and "was not so egregious as to constitute an abuse of power condemned by the Constitution"). In sum, whether excessive force was used in violation of section 1983 is a question of fact for a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

jury to resolve.

B. *The Department and the City.*

Next, we address the liability of the Department and the City for the Elmores' section 1983 claims. Under the holding of *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), a municipality cannot be held liable for violations of section 1983 under the doctrine of respondeat superior. *Id.* at 694. Rather, a municipality incurs liability only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," *id.* at 690, or when the constitutional deprivations are the result of a "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. Additionally, proof of a single incident of unconstitutional activity is insufficient to establish liability under *Monell. City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824 (1985). According to the Supreme Court, "considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Id.* (footnotes omitted).

The Elmores contend that the Department and the City have a policy of destroying records of complaints against police officers, and that this policy interferes with the ability of citizens to seek redress. They further contend that the Department and the City have wrongly failed to implement a policy giving citizens a role in reviewing complaints against police officers. Additionally, they contend that the Department and the City have an informal policy not to discipline police officers. For support, they allude to two cases in which officers were not disciplined after reports were filed by citizens.

*8 Initially, we note that the Elmores have fallen short of the requirements of *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). Other than the vague and unsupported mention of two cases where officers were not disciplined, the Elmores have set forth no evidence showing a Department or City policy of arresting persons without probable cause and through the use of excessive force. Further, nothing indicates that the practice of destroying records after a certain period of years is for wrongful motives; rather, it seems likely that the practice is implemented for practical reasons (such as simplification of record-keeping tasks and elimination of out-dated files). In any event, the Elmores have failed to meet their burden of producing specific evidence showing a practice actionable under section 1983. Additionally, the Elmores have provided no legal support for their theory that the absence of

citizen review of complaints against police officers is actionable under section 1983. In short, nothing indicates a Department or City policy or practice of arresting persons without probable cause and through the use of excessive force, or even a policy or practice of failing to discipline officers who arrest without probable cause or use excessive force. Thus, we will enter summary judgment for the City and the Department on the Elmore's section 1983 claims.

II. *The Fifth and Sixth Amendment Claims.*

The defendants have moved for summary judgment on the Elmores' fifth and sixth amendment claims. The defendants' motion is somewhat perplexing because the Elmores' complaint does not specifically refer to the fifth or the sixth amendments. In fact, the proper manner in which to assert such claims would be under section 1983, but the Elmores do not refer to either amendment in their section 1983 claims. In any event, we will briefly address the parties' arguments on the fifth and sixth amendments.

The defendants assert that they are entitled to summary judgment if the arrests were based on probable cause. The Elmores' response is rather puzzling. As to the fifth amendment claims, they state:

The Supreme Court of the United States has held that the right of privacy is a fundamental right guaranteed by the United States Constitution. *Griswold v. Connecticut,* 381, U.S. 479, 14 L.Ed.2d 510, 85 S.Ct. 1678. The court [sic] found the right to privacy in the penumbras and enamations [sic] of the First, Third, Fourth, Fifth, Ninth and Fourteenth amendments. The right of personal privacy has been held to be the "right to be let alone." *Katz v. U.S.* [sic], 389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507. The plaintiffs [sic] right [sic] under the Fifth Amendment were violated when the defendant unlawfully arrested, assaulted and prosecuted them. The plaintiffs clearly had a right to be left alone.

As to the sixth amendment claims, the Elmores state as follows:

Plaintiff [sic] rights under the 6th Amendment were violated when the officers charged plaintiff Carolyn Elmore with resisting arrest, obstruction and disorderly conduct and charged plaintiff Aaron Elmore with disorderly conduct and resisting arrest. The facts show that plaintiffs were charged with the offenses as a pretext to the interference of their constitutional rights. There was no probable cause to arrest. The plaintiffs were not informed of the true nature and cause of the accusations.

*9 The Elmores' complaint seeks no redress under the Constitution apart from the claims under Title 42. However, to be certain that the parties are not confused as to the scope of the issues which will be addressed at trial, we will grant

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the defendants' summary judgment motion as to the Elmores' fifth and sixth amendment claims. The fifth amendment claim, as characterized in the Elmores' memorandum opposing summary judgment, is nothing short of absurd. Further, no evidence indicates that the Elmores were not informed of the charges against them.

III. *The Section 1981 Claims.*

The complaint mentions section 1981 only in count 1, which concerns Carolyn. However, in their memoranda regarding the summary judgment motion, the parties appear to assume that both Aaron and Carolyn have made claims under section 1981. For purposes of this motion, we will assume that to be the case.

Section 1981 states as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

To succeed on their section 1981 claims, the Elmores must prove that the defendants' actions were motivated by intentional discrimination. *See Washington v. Simpson,* 806 F.2d 192, 197 (8th Cir.1986) (citing *General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 391 (1982)). The Elmores assert that there was intentional discrimination because (1) the Elmores are black, whereas the officers are not, (2) Officer Asten swore at Carolyn and used excessive force, and (3) after striking Aaron, Officer Asten stated, "You don't like that, do you?" The Elmores conclude with the statement that "[a]lthough plaintiff has no direct evidence of racial anemus [sic], it can be inferred from defendant Asten's conduct that the unlawful arrest and attack of plaintiffs was done for a discriminatory reason." Again, the Elmores have fallen short of the requirements of *Anderson v. Liberty Lobby, Inc.* They may not simply assert that there was purposeful discrimination; they must set forth specific facts indicating discrimination. The facts that the Elmores and the officers were of different races, excessive force was allegedly used, and Officer Asten's alleged statement to Aaron do not indicate racial motivation. Therefore, we will grant the defendants' motion for summary judgment on the Elmores' section 1981 claims.

IV. *The Common Law Assault Claims.*

The Elmores' seek damages against Officer Asten for assault under Kansas common law. Officer Asten asserts that he is entitled to qualified immunity, arguing that "if the court finds that the officers are entitled to qualified immunity under the plaintiffs' allegations under 1983, then they should be entitled to the same immunity on the plaintiffs' state law claims alleging excessive force." As discussed above, qualified immunity does not shelter Officer Asten from possible liability as to the Elmores' claims of excessive force. Thus, Officer Asten's motion for summary judgment on the Elmores' assault claims is denied.

V. *The Section 1985 Claims.*

*10 As with the section 1981 claims, the Elmores' complaint refers to section 1985 only in count 1, which pertains to Carolyn; however, in their memoranda regarding summary judgment both sides assume that Aaron and Carolyn each make section 1985 claims. In this order, we will make the same assumption.

Section 1985 states as follows:

(3) If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ..., [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985. In essence, section 1985 prohibits racially based conspiracies to deny an individual his civil rights. In the instant action, as discussed above, the Elmores' have failed to sufficiently establish that the defendants (particularly Officer Asten) were motivated by racial animus. Thus, their section 1985 claim fails.

VI. *Summary.*

In summary, we will grant the defendants' motion for summary judgment on (1) the Elmores' section 1983 claims pertaining to their arrest, (2) the Elmores' fifth and sixth amendment claims (other than any claims of excessive force under section 1983, which may incorporate notions of the fifth amendment), (3) the Elmores' section 1981 claims, and (4) the Elmores' section 1985 claims. We will deny the defendants' motion as to (1) the Elmores' section 1983 claims pertaining to the use of excessive force, and (2) the Elmores' assault claims. Thus, the only matter remaining is the issue of whether Officer Asten used excessive force. Accordingly, Aaron and Carolyn each may maintain claims

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

against officer Asten under section 1983 and state common law regarding the amount of force used. From this date forward, the parties should focus solely on that issue.

IT IS THEREFORE ORDERED that the summary judgment motion of the defendant City is granted.

IT IS FURTHER ORDERED that the summary judgment motion of the defendant Department is granted.

IT IS FURTHER ORDERED that the summary judgment motion of the defendant Officer Asten is granted in part. Summary judgment shall be entered for Officer Asten on the Elmores' (1) section 1983 claims based on wrongful arrest, (2) fifth and sixth amendment claims, (3) section 1981 claims, and (4) section 1985 claims.

> FN1. The defendants filed their motion, the plaintiffs responded, and the defendants replied. Later, the defendants filed a motion to amend their reply to include discussion of a case published in 1977. The plaintiffs then responded to the initial reply, and the defendants moved to strike this second response. The plaintiffs then responded to the defendants' motion to strike the plaintiffs' second response to the summary judgment motion. Based on D.Kan. Rule 206, we decline to consider either the defendants' amended reply or the plaintiffs' second response. Therefore, we will deny the defendants' motion to amend their reply, and we will grant the defendants' motion to strike the plaintiffs' response to the defendants' initial reply.

> FN2. The defendants have moved to strike portions of the affidavit of Carolyn Elmore, contending that the affidavit attempts to create a sham factual issue. *See Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986). Based on the factors enumerated in *Franks,* we are unconvinced that the affidavit attempts to create a sham issue. Thus, we will deny the defendants' motion to strike. However, we note that portions of the affidavit directly contradict various witnesses' statements, including Aaron's statement, made during the internal affairs investigation which took place shortly after this incident.

> FN3. Frankly, the court has had difficulty determining the exact nature of the Elmores' claims and both sides' arguments regarding the summary judgment motion, as neither the plaintiffs nor the defendants have stated their positions with any real clarity.

> FN4. The exact nature of the Elmores' section 1983 claims is not clearly delineated. We assume that the

Elmores are claiming that Officer Asten's use of allegedly excessive force infringed on the substantive aspects of their rights to liberty. *See Hewitt v. City of Truth or Consequnces,* 758 F.2d 1375, 1378-79 (10th Cir.1985), *cert. denied,* 474 U.S. 844; *see also Damm v. Sparkman,* 609 F.Supp. 749, 752-54 (D.Kan.1985).

1989 WL 103641, 1989 WL 103641 (D.Kan.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works