# EXHIBIT 5

DEPOSITION OF LAWRENCE STINNETT
TAKEN ON APRIL 8, 2003

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF MARYLAND
 3   ANTHONY GRAY                *
 4          Plaintiff,           *
 5              vs.              *   Case No. CCB-02-CV-385
 6   STATE OF MARYLAND, et al.   *
 7          Defendants.          *
 8   *    *    *    *    *    *    *    *    *    *    *
 9              Pursuant to Notice the deposition of
10   LAWRENCE STINNETT, was taken on Tuesday, April 8,
11   2003, commencing at 1:00 p.m., at the law offices of
12   Joel L. Katz, 2060 West Street, Annapolis, Maryland,
13   21401, before Ann D. Agee, RPR, Notary Public.
14   APPEARANCES:
15                     JOEL L. KATZ, ESQUIRE
                       2060 West Street
16                     Annapolis, Maryland,  21401
                       (On behalf of the Plaintiff)
17
                       KEVIN KARPINSKI, ESQUIRE
18                     ALLEN, KARPINSKI, BRYANT & KARP
                       100 E. Pratt Street, Suite 1540
19                     Baltimore, Maryland,  21202
                       (On behalf of the Defendant,
20                      Lawrence Stinnett)
21
```

DEPOSITION OF LAWRENCE STINNETT
TAKEN ON APRIL 8, 2003

Page 31

1    Q.    Huh?

2    A.    No.

3    Q.    No, that you didn't hear that about?

4    A.    No.

5    Q.    Did you, in fact, threaten him with
6  the electric chair?

7    A.    Never.

8    Q.    Never. Voluntary you said is on his
9  own to give a statement. Now would you also include
10 under there freewill?

11   A.    Right.

12   Q.    Is that fair?

13   A.    Yes.

14   Q.    Now during the course of your training
15 both as a Maryland state policeman as well as working
16 with Rick McDowell in modification of your manual were
17 the parameters as to the proper length of time in
18 interrogating an individual?

19   A.    I am not sure whether it was
20 incorporated into the manual. I am not sure. I
21 always used what I thought was reasonable.

Page 32

1    Q.    What is the length of time that you
2    consider reasonable in any interrogation?
3    A.    It depends on the time of day, the
4    time of night, whether the person has had something to
5    eat, or whether he had rest.  How alert they are.
6    Q.    How what?
7    A.    How alert they are.
8    Q.    I see.  Well, you know Anthony Gray
9    was picked up at 6 o'clock on the night of June 20th?
10   A.    Right.
11   Q.    1991.
12   A.    Yes, sir.
13   Q.    Did you inquire as to the last time
14   Anthony Gray had anything to eat?
15   A.    No.  But when we sent out for
16   sandwiches we asked --
17   Q.    Did you ask him --
18   A.    Did I ask him?
19   Q.    -- the last time he had something to
20   eat?
21   A.    No, we didn't ask him.

1    Q.   Did you inquire from him what time he
2  got up on that day?

3    A.   No.

4    Q.   At what time did your interrogation
5  begin?

6    A.   I would say the first one was when we
7  got to the barracks.  He was picked up at 6 o'clock
8  and we talked to him briefly; maybe a half hour.

9    Q.   Half hour?

10   A.   Yes.

11   Q.   Then where was he put?

12   A.   He was put back in the holding cell
13  downstairs and we called for a polygraph operator.

14   Q.   Who was the polygraph operator you
15  called?

16   A.   Corporal Williams.

17   Q.   Taking a polygraph was that something
18  he could elect to do or decline?

19   A.   Yes.

20   Q.   Did he elect to take the polygraph?

21   A.   Yes.

DEPOSITION OF LAWRENCE STINNETT
TAKEN ON APRIL 8, 2003

Page 40

1   a statement.

2         A.   Yes.

3         Q.   What time was that?

4         A.   I am not sure.

5         Q.   According to the statement it's 4:00
6   something in the morning.

7         A.   That is when it was taped. That is
8   when the taped statement started.

9         Q.   Well, let's get back to the initial
10  phrase voluntary, freewill. We can agree that you
11  don't know when the last time he had some sleep.

12            MR. KARPINSKI: Objection. Asked and
13  answered.

14        A.   He seemed alert. He never asked --

15            BY MR. KATZ:

16        Q.   I'm not asking your perceptions. We
17  don't know -- you did not know when you were taking
18  his statement the last time he slept or when he got up
19  that day on the 20th?

20            MR. KARPINSKI: Objection. Asked and
21  answered. You can answer again.

Page 78

1        A.    Yes.

2        Q.    Is that person entitled to make a call
3   to his family to obtain the services of an attorney?

4        A.    Yes.

5        Q.    Where was this interrogation carried
6   out?

7        A.    I think it was downstairs in the room
8   right next to the polygraph operator's room as I
9   recall.

10       Q.    The sheriff or the state police?

11       A.    State police.

12       Q.    Do you have a recollection of Anthony
13  Gray asking to call his family?

14       A.    No, sir.

15       Q.    Do you have a recollection of Anthony
16  Gray asking to call an attorney?

17       A.    No, sir.

18       Q.    Of course I am talking about the
19  period of time you were in there.  Well, actually I
20  have no other questions.

21             I did request certain items from the