# EXHIBIT 12



The Florida State University
Tallahassee, Florida 32306

School of Criminology and Criminal Justice

April 28, 2003

Mr. Alan Hilliard Legum
Attorney at Law
275 West Street, Suite 305
Annapolis, Maryland 21401

Re: *Anthony Gray v. State of Maryland, et al.*

Dear Mr. Legum:

Please accept the following as a preliminary report of my observations and opinions in the above-styled case. In preparing this report, I have reviewed a number of documents and exhibits relating to the incident in question, including:

The Complaint;
Transcript of the deposition of Anthony Gray;
Answers to Interrogatories of Defendants State of Maryland, Sheldon, Stinnett, and Newcomer;
Plaintiff's Answers to Interrogatories and Response to Request for Production of Documents;
Medical report of Dr. Patrick Sheehan; and
Transcript of the recorded interview of Anthony Gray.

I base my findings on my review of these documents and exhibits, as well as my experience as a criminologist, police officer, and expert in the field of law enforcement policies, practices and training.

This report is based on those documents and exhibits provided to me as of the date shown above; I reserve the right to supplement or amend this report as other information becomes available.

Included with this report is a copy of my fee schedule and curriculum vitae, as well as a list of cases in which I have been retained as an expert in the past four years.

It is my considered professional opinion that the arrest, prosecution, and detention of Anthony Gray for the rape and murder of Linda May Pellicano was the result of official misconduct on the part of those law enforcement officers involved in the investigation of this case, specifically, the named defendants.

The evidence in this case clearly reveals that Anthony Gray was coerced by the defendants in this case into making a statement incriminating himself in the rape and murder of Mrs. Pellicano. The defendants obviously focused on Mr. Gray along with Paul Holland and Leonard Long as the perpetrators of this crime, to the exclusion of all other reasonable possibilities. In so doing, defendants Stinnett, Sheldon, and Newcomer ignored a wealth of readily available exculpatory evidence that would have exonerated Anthony Gray very early in the investigative process. Specifically, there was

- hair evidence found on the body of Mrs. Pellicano that came from a white male;
- DNA evidence that would have definitively excluded Gray, Holland, or Long as having raped Mrs. Pellicano;
- handwriting evidence from checks stolen from Mrs. Pellicano that would not have matched exemplars from Gray, Holland, or Long;
- fingerprint evidence at the scene that did not match the prints of Gray, Holland, or Long; and
- eyewitness accounts of a lone white male driving away from the crime scene in Mrs. Pellicano's car.

None of this evidence was properly evaluated or considered. The defendant peace officers chose instead to proceed with the prosecution of Mr. Gray based almost exclusively on his "confession," which they knowingly obtained from him by the use of threats, deception, and other coercive tactics. Mr. Gray asserts that the investigating officers denied his requests for counsel prior to his interrogation, and that Sheriff Stinnett told him he would "fry in the electric chair" unless he confessed. Mr. Gray apparently has limited mental capacity, having attended special education classes in public school, a fact which investigators either knew or could have readily discerned. In light of the materials provided to me to date for review, it is evident that defendants Stinnett, Sheldon, and Newcomer took advantage of Mr. Gray's limited mental abilities to improperly extract a false confession from him.

The tactics used by the defendant officers in this case have been outlawed at least since the *Escobedo* and *Miranda* decisions of the 1960's. In my opinion, no reasonable, prudent, well-trained peace officer in 1991 would have acted as did these officers, both in their interrogation of Mr. Gray and in their failure to thoroughly pursue the many obvious leads that would have exonerated him. I am also dismayed at the lack of supervisory and prosecutorial oversight in this investigation, which led to the disregard of critical evidence and the prosecution and conviction of an innocent man. In light of the harm that could and in fact did befall Anthony Gray, I find the actions of the defendant officers in this case to be shocking and unconscionable, and indicative of a deliberate indifference to the rights of Mr. Gray.

Please feel free to contact me if you have any questions or need additional input in this regard.

Sincerely,

George L. Kirkham
Professor Emeritus