# EXHIBIT B

```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND
 2
    ANTHONY GRAY                    *      CCB-02-CV-385
 3              Plaintiff
                                    *
 4       vs.                               Baltimore, Maryland
                                    *
 5  STATE OF MARYLAND, et al.
                Defendants          *      March 24, 2003
 6
                     *      *      *      *      *
 7

 8


 9           Deposition of ANTHONY GRAY, a witness of

10  lawful age, taken on behalf of the Defendant, Calvert

11  County, in the above-entitled cause, pending in the

12  District Court of the United States for the District of

13  Maryland, before Dawn L. Venker, a Notary Public in and

14  for Baltimore County, Maryland, at 100 E. Pratt Street,

15  Suite 1540, Baltimore, Maryland 21202, on the 24th day

16  of March, 2003.

17                   *      *      *      *      *

18


19


20


21  Reported By:  Dawn L. Venker
```

```
 1    APPEARANCES:
 2
 3            JOEL L. KATZ., Esquire
                  On behalf of the Plaintiff
 4            KEVIN KARPINSKI, Esquire
                  On behalf of the Defendants, Calvert
 5                County & Stinnette
 6            DONALD E. HOFFMAN, Esquire
                  On behalf of the Defendants, State of
 7                Maryland, Newcomer, & Sheldon
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
```

```
 1              A N T H O N Y  G R A Y,
 2   called as a witness and having been duly sworn,
 3   testified as follows:
 4              EXAMINATION BY MR. KARPINSKI:
 5         Q    Would you please state your full name?
 6         A    Anthony Gray.
 7         Q    Mr. Gray, my name is Kevin Karpinski.  I
 8   introduced myself before your deposition began.  I
 9   represent Lawrence Stinnette in an event you have filed
10   in the United States District Court for the District of
11   Maryland.
12         A    Uh-huh.
13         Q    Have you had your deposition taken before?
14         A    No.
15         Q    Something similar to this?
16         A    No, sir.
17         Q    As you can see, a court reporter is
18   present, and the court reporter is taking down
19   everything that is said here today.  If I ask you a
20   question that you don't understand, I'm not trying to
21   trick you.  Just let me know.  I will rephrase the
```

1    A    Well, I don't remember exact time.

2    Q    Did you have any contact with Mr. Stinnette
3 while you were in the detention center?

4    A    No, sir.

5    Q    Did you have any contact with Mr. -- with
6 Deputy Newcomer from the time -- from June 21, 1991
7 till you gave another statement on August 6th, 1991?

8    A    No.

9    Q    No contact whatsoever; is that correct?

10   A    No.

11   Q    Do you recall -- strike that. Have you had
12 a chance to review Exhibit 4?

13   A    Yes, sir.

14   Q    What is Exhibit 4?

15   A    A statement.

16   Q    Do you recall giving this statement on or
17 about August 6th, 1991?

18   A    Yes, sir.

19   Q    Let me ask you some questions, Mr. Gray,
20 about what occurred from the time of your first
21 statement on June 21, 1991 which is marked as Exhibit 3

1  to your deposition and your statement on August 6th,
2  1991 which is marked as Exhibit 4.
3       A    Okay.
4       Q    Do you understand the time frame we are
5  talking about?  We are talking about July (sic) 21 to
6  August 6, 1991.  My question to you is do you recall
7  having any contact with any law enforcement officers at
8  the detention center from June 21, 1991 until August
9  6th, 1991?
10      A    No, sir.
11      Q    You don't recall having any contact?
12      A    No, sir.
13      Q    Do you recall giving any statements from
14 June 21, 1991 to August 6th, 1991?
15      A    No, sir.
16      Q    Sitting here today, do you believe the
17 interview that took place on August 6th, 1991 happened
18 at the sheriff's office, or did it occur somewhere
19 else?
20      A    I believe it happened at the sheriff's
21 office.

1    Q    And sitting here today, do you have a
2  recollection of who was present during your interview
3  on August 6th, 1991?

4    A    No, sir.

5    Q    You don't remember any -- do you remember
6  any of the officers who would have been present during
7  this August 6th, 1991 interview?

8    A    No, sir.

9    Q    Do you know if Mr. Stinnette was present on
10 August 6th, 1991?

11   A    No, sir. I don't.

12   Q    Do you know if Deputy Newcomer was present
13 on August 6th, 1991?

14   A    No, sir.

15   Q    Do you know if Mr. Sheldon was present on
16 August 6th, 1991?

17   A    No, sir.

18   Q    What's been marked as Exhibit 4, you've had
19 a chance to read that, correct?

20   A    Right. Yes, sir.

21   Q    Is that what you said on August 6th, 1991?

1    A    Yes, sir.

2    Q    I'm not -- Mr. Katz raised a good point,
3  that is, what you actually said as opposed to what you
4  actually believe occurred as it relates to the
5  Pellicano murder, correct?

6    A    Yes, sir.

7    Q    But that is what you told those who were
8  present on August 6th, 1991, correct?

9    A    Yes, sir.

10   Q    After you gave this statement on August
11 6th, 1991, did you have any involvement with
12 Mr. Stinnette from the time of the statement on August
13 6th, 1991 until you pled guilty on October 7th, 1991?

14   A    No, sir.

15   Q    Did you have any contact or communication
16 from Deputy First Class Newcomer from August 6th, 1991
17 until October 7, 1991 when you pled guilty?

18   A    No, sir.

19   Q    How about with Mr. Sheldon?  Did you have
20 any contact with Mr. Sheldon from the time you gave the
21 statement on August 6th, 1991 until you pled guilty on

```
 1      Q      Is that the reason why you gave them that
 2   statement --
 3      A      Yes, sir.
 4      Q      -- on that first night?
 5      A      Yes, sir.
 6      Q      Do you recall from the period of time from
 7   June 20th till August 6th -- do you remember that
 8   period of time when you were down the detention center?
 9   -- did you ever have an opportunity to meet with your
10   mother?  Did she come down to the detention in Calvert
11   County to see you?
12      A      Yes, sir.
13      Q      She did?
14      A      Yes, sir.
15      Q      But that was after you had given the first
16   statement?
17      A      Yes, sir.
18      Q      Now, let's go to the -- let's go to the
19   second statement.  Deposition Exhibit Number 4.  Do you
20   recall ever signing an advice of rights?
21      A      No, sir.
```

```
 1          Q      And you were asked before repeatedly

 2   whether or not you were advised your right to an

 3   attorney?

 4          A      Yes.

 5          Q      Do you remember whether you met with Ms.

 6   Christine Gutierrez before you gave this statement?

 7          A      That was after.

 8          Q      Met with her afterwards?

 9          A      Yes, sir.

10          Q      When you gave this statement, was there any

11   attorney present?

12          A      No, sir.

13          Q      Now, with regard to the information about

14   the tobacco stick and -- you were asked do you remember

15   if anybody ejaculated during the rape, and this

16   information about what took place, where did you get

17   all this information?

18          A      Where did I get all this information?

19          Q      How did all this information come about?

20   Do you recall?

21          A      They told me all that information.
```

```
 1    Q    Who told you all that information?
 2    A    Police.
 3    Q    What did they tell you?
 4    A    I don't exactly remember what they told me.
 5    Q    Well, when this information was taken, were
 6  you provided information by them beforehand, or did
 7  they tell you and then record it, or how was it done?
 8    A    Beforehand.
 9    Q    Before I gave this statement, who did you
10  meet with that gave you this information?
11    A    Newcomer and Sheldon.
12    Q    And they went over what they wanted you to
13  say?
14    A    Yes, sir.
15    Q    Did you at some point in time try to
16  withdraw your guilty plea before Judge Rhymer?
17    A    Yes, sir.
18         MR. HOFFMAN:  Objection.  That is outside
19  the scope of the direct.
20         MR. KATZ:  You're right.  I'm sorry about
21  that.
```